Larry **CAMPBELL**, Appellant,

v.

**ADVENTIST HEALTH SYSTEM/SUN-BELT, INC.**, Adventist Health System/Sunbelt, Inc. d/b/a Huguley Memorial Medical Center, and AHS Services, Inc., Appellees.

No. 2–96–201–CV.

Court of Appeals of Texas,
Fort Worth.

May 22, 1997.

Robert M. Kisselburgh, Law Office of Lonnie C. Mcguire, Jr., P.C., Irving, for Appellant.

D. Michael Wallach, Jennifer M. Andrews, and Leslie Dillon Walker, Wallach, Jones, & Moore, P.C., Fort Worth, for Appellees.

Before DAY, BRIGHAM and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

This is an appeal from two summary judgments in favor of the appellees that resolved all causes of action alleged against them by appellant Larry Campbell. He sued for injuries he received while working on the construction of a steel canopy at a medical office building. Finding no reversible error, we affirm.

The injuries happened at premises owned and managed by appellee Adventist Health System/Sunbelt, Inc. (Adventist), a non-profit

health care provider company. The premises are occupied by Adventist Health System/Sunbelt, Inc. d/b/a Huguley Memorial Medical Center (Hospital). The Hospital is a separate appellee. The Hospital wholly owns appellee AHS Services, Inc. (AHS), the general contractor for the construction project.

Mr. Campbell's suit alleges premises liability against Adventist, the Hospital, and AHS based on acts of negligence, including failure to maintain a safe job site, monitor safety conditions, adequately supervise the site, or enforce contractual obligations with subcontractor Metal Systems, Inc. (Metal). Mr. Campbell also alleged the negligent hiring of Metal by AHS. When the suit began, Metal was a defendant, but that cause of action was severed, and Metal is not a party to this appeal. Additionally, Mr. Campbell pled that Adventist and the Hospital are liable for the acts and omissions of AHS on a theory that they are alter egos of AHS.

The first summary judgment adjudicated all causes of action except negligent hiring, and that claim was adjudicated by the second summary judgment. Mr. Campbell asserts that the trial court erred by granting the first summary judgment because genuine issues of material fact showed that the appellees owed a duty to him, and the summary judgment evidence included the inconsistent and contradictory testimony of two interested witnesses. He contends that granting the second summary judgment was error because there are genuine issues of material fact on the negligent hiring claim.

## The Summary Judgment Motions

In March and April 1996, Adventist, the Hospital and AHS filed a motion for summary judgment and a supplemental motion for summary judgment. The grounds for the first motion were:

1. Adventist, the Hospital, as landowner, and AHS, as general contractor, owed no duty to Mr. Campbell, who worked for the subcontractor of another subcontractor, to ensure that he safely performed the work he was hired to do.

2. Adventist, the Hospital, as landowner, and AHS, as general contractor, owed no duty to inspect, monitor, or supervise independent subcontractor Metal, or the employees (Mr. Campbell) of Dan Dunahoo, who was a subcontractor of Metal.

Mr. Campbell then amended his petition and added a claim against the movants alleging that the subcontract between AHS and Metal amounted to negligent hiring. The movants reacted by filing their supplemental motion for summary judgment on grounds that:

1. Neither Adventist nor the Hospital were parties to the subcontract between AHS and Metal and therefore owed no duty to Mr. Campbell.

2. As a matter of law, the subcontract between AHS and Metal was not the proximate cause of Mr. Campbell's injuries.

## Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* Tex.R.Civ.P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *See Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *See Great Am.*, 391 S.W.2d at 47. The sum-

mary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *See City of Houston,* 589 S.W.2d at 678.

### A Question of Duty

Under Mr. Campbell's first point of error, he asserts that genuine issues of material fact exist on the question of whether Adventist, the Hospital, and AHS had a contractual right to control the method and manner of work by personnel on the job site and, therefore, owed Mr. Campbell a duty to exercise reasonable care in supervising the activities of subcontractors and preventing them and their employees from engaging in unsafe conduct. He reasons that in the role of general contractor, AHS retained control over the manner of performance of Metal's subcontract work and, therefore, had the duty to exercise reasonable care in supervising Metal's subcontract work. Because the theory of *alter ego* is not mentioned in the first point of error or in Mr. Campbell's arguments under that point, we will not address that principle in connection with the first point.

When examining the right of an injured party to prevail on a negligence cause of action, our threshold inquiry is whether the tortfeasor owed the injured party a legal duty not to proximately cause the injury alleged. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Whether a legal duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question. *See Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex. 1995). Adventist, the Hospital, and AHS contend that the summary judgment evidence establishes that none of them had the right to supervise or control the work done by Metal, or by Mr. Campbell or his employer, so neither Adventist, the Hospital, nor AHS owed a duty to Mr. Campbell.

### Control of the Work

It is well established that the contractual right of control, not its actual exercise, gives rise to the duty to see that an independent contractor performs work in a safe manner. *See Pollard v. Missouri Pac. R.R. Co.,* 759 S.W.2d 670, 671 (Tex.1988). When a party contractually retains a right of control over the work, the failure to exercise that control does not dissolve the party's potential liability for an injury to an independent contractor on the job. *See id.* at 671.

However, an owner or occupier of land generally has no duty to see that an independent contractor performs work in a safe manner. *See Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987); *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985). Also, where an independent contractor has control of the work and has the responsibility for doing it in a safe manner, and danger arises from the manner in which the independent contractor's employees perform that work, the consequences of the dangerous performance belong to the independent contractor, not the premises owner. *See Abalos v. Oil Dev. Co. of Texas,* 544 S.W.2d 627, 631 (Tex.1976).

### The Primary Subcontract

Mr. Campbell insists that we need only look at the subcontract between Metal and AHS for summary judgment evidence that AHS, as general contractor, had a duty to prevent Metal and its subcontractor, Dan Dunahoo, from doing work in an unreasonably dangerous manner. Mr. Campbell relies on *Redinger,* for the principle that one who retains the power to direct the order in which the work is to be done, or to forbid it being done in a dangerous manner, is liable when the evidence proves injury was caused by the power-retaining party's failure to exercise ordinary care. *Redinger,* 689 S.W.2d at 418. Mr. Campbell maintains that his claims in this case are governed by *Redinger* because the subcontract between Metal and AHS let AHS retain (1) control over the project's completion time, (2) the right to require Metal to enter into contracts with other subcontractors, (3) the right to require Metal to follow safety measures initiated by AHS, (4) the right to require Metal to comply with laws, ordinances, rules, and regulations covering the construction, and (5) the authority to specify the kinds of insurance

Metal would provide. Mr. Campbell argues that those five provisions of the subcontract show there are genuine issues of material fact about the level of control retained by Adventist and AHS.

The summary judgment evidence includes the subcontract dated April 28, 1992, attached as an exhibit to Mr. Campbell's Response to the first motion for summary judgment. The contract is entitled "Standard Form of Agreement Between Contractor and Subcontractor." It identifies AHS as the general contractor and Metal as the subcontractor, but does not mention Adventist, the Hospital, or Mr. Campbell. The terms and conditions of the subcontract are numbered paragraphs that include these provisions:

> 1.1 ... The Subcontract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral....

> 3.2.2 [AHS] shall *not give instructions or orders directly to employees or workmen of [Metal]*, except to persons designated as authorized representatives of [Metal].

> 4.1.4 [Metal] shall furnish to [AHS] periodic progress reports on the Work of this Subcontract....

> 4.1.6 [Metal] shall pay for materials, equipment and labor used in connection with the performance of this Subcontract....

> 4.3.1 [Metal] shall take reasonable safety precautions with respect to performance of this subcontract, shall comply with safety measures initiated by [AHS] and with applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons or property....

> 8.1 [Metal] shall execute the following ... Work ... including all labor, materials, equipment, services and other items required to complete ... the Work ... (a precise description of the Work [is as follows]) Plans by Peter Galier.... See ... Addendum 6(a)....

Addendum 6(a), a part of the subcontract, requires Metal to furnish the necessary materials and labor to install the new entrance canopy at the medical office building on the Hospital's property. The document obligates Metal to provide the necessary shop drawings and perform the structural framing and other construction of the canopy. Paragraph 13.1 of the subcontract requires Metal, at its sole expense, to purchase and maintain the types of insurance coverage for the project that are listed in that section.

Despite Mr. Campbell's contention that the holding of *Redinger* compels reversal of the summary judgments in this case, we find the facts of *Redinger* distinguishable from the facts in the summary judgment evidence here. In *Redinger*, there was evidence that the general contractor *retained* the power to *direct* the order in which the work was to be done, *retained* the power to *forbid* doing work in a dangerous manner, and then *exercised* those retained powers by *actively directing* a dangerous event on the job site that resulted in injury to a subcontractor's employee. *Redinger,* 689 S.W.2d at 418. The rule adopted and applied to the facts in *Redinger* is from the Second Torts Restatement:

> One who entrusts work to an independent contractor, but who *retains the control* of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

RESTATEMENT (SECOND) OF TORTS § 414 (1965) (emphasis added). After examining the subcontract between AHS and Metal, we are persuaded that a comment to section 414 denies that rule's application to the subcontract:

> In order for the rule stated in [section 414] to apply, the employer must have retained at least some degree of control over the *manner* in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled

as to his methods of work, or as to operative detail. *There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.*

*Id.* § 414 cmt. c (emphasis added).

■ Accordingly, we must analyze Mr. Campbell's contentions about the AHS/Metal subcontract provisions in light of comment c. Doing so, it is clear that Mr. Campbell believes that the subcontract's paragraphs retain for AHS such a right of control over the operative detail and method of the subcontractor's work that neither the subcontractor, Metal, nor the sub-subcontractor, Dan Dunahoo, were free to do the work in their own way. We disagree. Because none of the paragraphs is ambiguous, the construction of each provision was a question of law for the trial court and is the same for us. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

First, Mr. Campbell points to subcontract paragraph 9.3 as evidence that AHS retains control over the project's completion time. However, subcontract paragraph 9.3 merely provides that Metal will complete its work "[a]s soon as possible." And comment c to section 414 makes clear that even if AHS has a general right to order the work stopped or resumed as it progresses, that does not invoke the section 414 rule.

Second, Mr. Campbell points to paragraph 2.2, which says that AHS may require Metal to enter into agreements with subcontractors who perform any part of Metal's work on the project so they will assume the same rights and obligations that are in the AHS/Metal subcontract. The language of 2.2 does not retain for AHS a right to *impose* other subcontractors on Metal, but if Metal *elects* to engage any other subcontractors, paragraph 2.2. merely assures that those others will abide by the same terms under which AHS hired Metal.

Third, Mr. Campbell stresses paragraph 4.3.1, which is Metal's agreement that it will take reasonable safety precautions in doing the subcontract work and comply with the safety measures of AHS and applicable laws or regulations. Paragraph 4.3.1 does not retain for AHS the right to control the means, methods, or details used by Metal in doing the subcontract work. It simply imposes a duty on Metal to act safely in doing that work.

Fourth, Mr. Campbell points to paragraphs 4.2.1 and 4.2.2 which impose on Metal a duty to comply with all laws, ordinances, rules, regulations, and orders of public authorities that relate to the work to be done under the subcontract. The two paragraphs do not retain for AHS the right to control the means, methods, or details used by Metal in doing the subcontract work.

Fifth, Mr. Campbell emphasizes paragraph 13.1 which requires that Metal pay for and maintain insurance coverage relative to the subcontract work. Paragraph 13.1 does not retain for AHS a right to control the means, methods, or details of Metal's subcontract work. Nor does 13.1 give AHS the right to change or increase the insurance coverages throughout the work period. Paragraph 13.1 merely imposes a duty on Metal, at the start of the subcontract and before work begins, to provide insurance that will remain in effect for the duration of the work.

We are persuaded that the subcontract provisions highlighted by Mr. Campbell are not evidence that AHS retained the right to control the method and manner of work at the job site. Those provisions do not compel a conclusion of law that AHS had a duty to exercise reasonable care to supervise subcontractors and to prevent them and their employees from engaging in unsafe conduct.

### The Deposition

■ The summary judgment evidence also includes Mr. Campbell's deposition in which he testified that he was not employed by subcontractor Metal, but instead worked for Dan Dunahoo, a *sub*-subcontractor that Metal engaged to work on the canopy. Dan Dunahoo in turn hired Mr. Campbell as a welder and iron worker for the job, and Mr. Campbell's deposition confirms that his only supervisor on that job was Dan Dunahoo. He testified that "nobody" supervised Dan Dunahoo.

Mr. Campbell did not come to the job as a novice. He testified that most of his work at

the project was done while he was on portable scaffolding; that he understood how the scaffold had to be braced to prevent unsteadiness and how the worker's platform planks had to fit; and that he inspected the scaffold's wheels, brakes, and bracing the first day he worked there and observed it each time he climbed the scaffold after that. He testified that during the time he was employed by Dan Dunahoo on that job, he never asked anyone to inspect the work he periodically did to reposition or change the scaffolding. He verified that any time he thought it necessary to disassemble, move, and reassemble parts of the scaffold in order to perform his welding or other iron work on the canopy, the decision was his alone to make and he did that task without direction from anyone because it was an integral part of his job.

When asked on deposition to describe what he thought was unsafe about his job, Mr. Campbell testified "nothing that I can remember." He testified that on September 18, 1992, while working alone, he fell from the scaffold and was injured. Mr. Campbell was asked, "[o]n the 18th, because you were in charge of yourself on that job ... you could have stopped at any time if you thought your safety was in question?" He answered, "Yes."

This is not a case where Mr. Campbell was injured by the work methods of subcontractor Metal, sub-subcontractor Dan Dunahoo, or even a coworker. Nor a case in which any of them or their work methods injured an invitee from outside the project. Instead, the summary judgment evidence shows that Mr. Campbell lost his balance, fell, and was injured after he apparently made the scaffold unsteady by some alteration. Even when the summary judgment evidence and its reasonable inferences about the threshold question of *duty* are reviewed in a light most favorable to Mr. Campbell's negligence action, Mr. Campbell's own testimony on the negligence element of *duty* supports the appellee's original and supplemental motions for summary judgment. It is clear from Mr. Campbell's testimony that he willingly expected and accepted the responsibility of taking precautions necessary to safely adjust the scaffold-

ing for his work and that he considered the adjustment task to be part of an experienced welder and iron worker's job, to be done without supervision from anyone else.

■ Mr. Campbell's deposition shows that the dangerous condition was a scaffold that became unsteady on only one occasion, when Mr. Campbell removed a cross bar. A repetitive task that he considered routine, adjusting or altering the scaffolding was peculiar to the technical specialty for which Mr. Campbell was hired by Dan Dunahoo. Because the task was an integral part of the work that Mr. Campbell expected when he began the job, the possibility of having an unsteady scaffold in his work was not a concealed dangerous condition that was unknown to him. *See Shell Chem. Co. v. Lamb*, 493 S.W.2d 742, 747 (Tex.1973); *Barham v. Turner Constr. Co. of Texas*, 803 S.W.2d 731, 735 (Tex.App.—Dallas 1990, writ denied).

The duty that Mr. Campbell advocates for Adventist, the Hospital, and AHS is a duty to forbid him from making his own scaffold unsteady and then climbing onto it. But because he was an experienced welder and iron worker and because the scaffold was his work station, Mr. Campbell controlled it and was in the most superior position to daily inspect its bracing and prevent the scaffolding from being unsteady. *See Shell Chem. Co.*, 493 S.W.2d at 748.

On the facts established by the summary judgment evidence, we find no duty on the part of general contractor AHS to anticipate that Mr. Campbell, an experienced worker, would alter his scaffold into an unsteady state and then climb onto it; nor a duty to supervise the manner in which Mr. Campbell did the repetitive task of moving, disassembling, or reassembling the scaffold as a routine part of the speciality he was hired to perform. *See id.* We conclude that with their first motion for summary judgment, Adventist, the Hospital, and AHS presented summary judgment evidence that negates the element of *duty*, an essential element of Mr. Campbell's negligence claim.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot

be established. *See Centeq Realty,* 899 S.W.2d at 197; *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 537 (Tex.1975). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *See Centeq Realty,* 899 S.W.2d at 197. The five subcontract provisions offered by Mr. Campbell as controverting summary judgment evidence on the question of *duty* did not prove the existence of a genuine issue of material fact about that element of his negligence claim. We overrule the first point of error.

### Interested Witnesses

The complaint in Mr. Campbell's second point of error is that the trial court granted summary judgment in reliance on evidence of two interested witnesses whose depositions and affidavits allegedly contain inconsistent and conflicting testimony. The two witnesses are Mark Wood, the construction manager for AHS, and William Robertson, the president of AHS and the executive vice president of the Hospital. That they are "interested" witnesses is undisputed. Uncontroverted evidence from an interested witness does nothing more than raise a fact issue unless it is clear, positive, direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. *See* TEX.R.CIV.P. 166a(c); *Winkler v. Kirkwood Atrium Office Park,* 816 S.W.2d 111, 114 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

In Mark Wood's uncontroverted affidavit, he stated that he "looked to and relied [upon] the individual subcontractors to direct and supervise their workers and to inspect and monitor their work area for unsafe conditions and/or unsafe acts by their employees." When asked at his deposition what he would do if he saw "any unsafe work practices," Mr. Wood testified that if he saw an unsafe practice, he would ask the worker to stop that practice and then he would inform the sub-

contractor so the subcontractor could correct the problem. On these matters, we find no inconsistency between the affidavit and the deposition.

Also in his affidavit, Mr. Wood stated that as construction manager, it was *his* responsibility to check with the subcontractors' representatives to ensure that their portions of the project were completed in a timely manner according to specifications. When he was asked in his deposition whether he knew what was the *corporation's* (AHS's) role in the construction, he said, "No." We find no inconsistency in describing his *personal* role in the affidavit and saying in his deposition that he did not know the role of the corporation.

Mr. Robertson's uncontroverted affidavit stated that Adventist, the Hospital, and AHS, all corporations, did not supervise or direct the workers or employees in performing their subcontract activities. During his deposition, Mr. Robertson testified that he was not aware of any supervision Mr. Wood himself ever gave Mr. Campbell. These statements are not inconsistent.

Even though Mr. Wood and Mr. Robertson are interested witnesses, the statements complained of in their affidavits and depositions are clear, positive, direct, and could have been readily controverted. They were not controverted. Accordingly, they establish as a matter of law that the appellees did not retain the right of control, and did not exercise control, over the work. The affidavits and depositions are competent summary judgment evidence. We overrule the second point of error.

### Negligent Hiring

Under Mr. Campbell's third point of error, he argues that there are genuine issues of material fact about whether AHS was negligent in hiring Metal and whether the negligence proximately caused his injuries and damages. Mr. Campbell pled that when AHS hired Metal as a subcontractor, AHS knew or should have known that Metal, its agents, servants, and employees were negligent in the past and had violated numerous safety standards on previous and existing job sites. On appeal, Mr. Campbell contends

that Adventist, the Hospital, and AHS failed to meet their burden as summary judgment movants to disprove at least one element of the claim that he was injured and damaged by the negligent hiring of Metal. Establishing that the negligent hiring of Metal by AHS was a proximate cause of Mr. Campbell's injury is an essential element of proving his claim for injury and damages. *See Portlock v. Perry,* 852 S.W.2d 578, 583 (Tex. App.—Dallas 1993, writ denied); *Dieter v. Baker Serv. Tools, A Div. of Baker Int'l, Inc.,* 739 S.W.2d 405, 408 (Tex.App.—Corpus Christi 1987, writ denied). Were it otherwise, simply by hiring an employee, one would become an insurer of the safety of every person who comes into contact with that employee. *See id.*

All parties to this appeal agree that the legal concept of proximate cause is broken into two more essential elements, *cause in fact* and *foreseeability,* and without both elements, proximate cause is not established. *See Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). *Cause in fact* requires evidence of probative force that the alleged negligence was a substantial factor in causing the injury and that without the negligence the injury would not have occurred. *Brown v. Edwards Transfer Co.,* 764 S.W.2d 220, 223 (Tex.1988); *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex.1980). Establishing *foreseeability* requires evidence of probative force that the negligent actor should have anticipated the danger that his negligent act created for others. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 550 (Tex.1985); *McClure,* 608 S.W.2d at 903.

■ Although the question of proximate cause is generally for the trier of fact, it becomes a question of law when the relationship between the injury and the alleged proximate cause, in this case negligent hiring, is attenuated or remote. *See, e.g., Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 472 (Tex. 1991); *Snellenberger v. Rodriguez,* 760 S.W.2d 237, 238 (Tex.1988); *Missouri Pac. R.R. Co. v. American Statesman,* 552 S.W.2d 99, 104 (Tex.1977); *Portlock,* 852 S.W.2d at 583. On the facts of this case, that relationship is both attenuated and remote.

We have already found that Adventist, the Hospital, and AHS had no contractual right to control the method and manner of work by personnel on the job site and, therefore, owed no duty to exercise reasonable care in supervising subcontractors and preventing them and their employees from engaging in working unsafely. *See Exxon Corp.,* 726 S.W.2d at 19; *Redinger,* 689 S.W.2d at 418. Moreover, the summary judgment evidence is that neither Adventist nor the Hospital were parties to the subcontract between AHS and Metal, and that Adventist and the Hospital were not parties to Metal's hiring of Dan Dunahoo or Dunahoo's hiring of Mr. Campbell. The summary judgment evidence from Mr. Campbell himself is that as a veteran welder and iron worker, he did not expect or depend upon AHS, Metal, or Dan Dunahoo to tell him how to adjust his scaffolding. Mr. Campbell relies on *Pollard* on the question of foreseeability. *Pollard,* 759 S.W.2d at 671. *Pollard,* however, involved allegations about an *inexperienced* independent contractor. *Id.* Inexperience is not the issue now on appeal. The summary judgment evidence compels the conclusion that when AHS subcontracted with Metal, it was not reasonably foreseeable that Metal would in turn subcontract with Dan Dunahoo, or that Mr. Dunahoo would someday hire Mr. Campbell, or that Mr. Campbell would someday alter his own scaffold into an unstable condition, then climb onto it and fall. We find that, as a matter of law, the subcontract between AHS and Metal was not a substantial factor in causing Mr. Campbell's injuries.

## Alter Ego

■ Finally, Mr. Campbell maintains under his third point of error that Adventist and the Hospital are liable for the acts of AHS on a theory of *alter ego.* An attempt to pierce the corporate veil, by contending that one corporation is the alter ego of another corporation, is not a separate cause of action. *See Gallagher v. Bintliff,* 740 S.W.2d 118, 119 (Tex.App.—Austin 1987, writ denied); *Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.,* 456 S.W.2d 476, 480 (Tex.Civ. App.—Fort Worth 1970, no writ). Rather, it is a theory of law that, when supported by

proven facts, enables a successful plaintiff to have adjudication that the alter ego corporation is *liable* for damages assessed against the corporation that is sued in the underlying cause. *See id.* In other words, a theory of alter ego is merely a means of increasing the number of entities that may become liable when and if a judgment is obtained in an underlying cause of action. *See id.*

■ The summary judgment evidence includes the uncontroverted affidavit of William Robertson, the Hospital's executive vice president, that neither Adventist nor the Hospital were parties to subcontracts with Metal and Dan Dunahoo. The affidavit is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted. *See* Tex.R.Civ.P. 166a(c). Because we have found that the appellees presented the trial court with competent summary judgment evidence that disproved the elements of duty and proximate cause, including the elements of cause in fact and foreseeability, AHS is not liable for Mr. Campbell's injuries. Because AHS is not liable, there is no liability to pass along to Adventist and the Hospital on an alter ego theory. We overrule the third point of error.

### Conclusion

While considering Mr. Campbell's three points of error under the standards of review discussed earlier, we resolved all doubts about the existence of genuine issues of material fact against the movants and viewed the evidence and its reasonable inferences in the light most favorable to Mr. Campbell. The summary judgment evidence presented by the movants negates, as a matter of law, at least one element of each of Mr. Campbell's causes of action. We find that the trial court did not err by granting the two summary judgments, and we affirm each of the judgments.