Juan Robert CHAPA and Adelina
Chapa, Appellants,

v.

KOCH REFINING COMPANY, H & S
Construction Company, A/K/A H & S
Construction, Inc., H & S Constructors,
Inc. and Stafftek, Inc., A/K/A Staff Tech,
Appellees.

No. 13–97–167–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 3, 1998.

Rehearing Overruled Jan. 28, 1999.

Filemon B. Vela, Constant & Vela, Corpus Christi, Craig S. Smith, Donald B. Edwards, Smith & Edwards, Corpus Chritsi, for Appellants.

James F. McKibben, Jr., Carlos Villarreal, Hunt, Hermansen, McKibben & English, Corpus Christi, Randal W. Hill, Porter, Rogers, Dahlman, Gordon & Lee, Corpus Christi, Christy Leigh Eubanks, Porter, Rogers, Dahlman & Gordon, Corpus Christi, Victor L. Harris, Charles W. Seymor, Seymore & Harris, Sugar Land, for Appellees.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## OPINION

RODRIGUEZ, Justice.

Appellant, Juan Chapa, sustained an on-the-job injury while working on Koch Refining Company's ("Koch") premises. He and his wife, Adelina, sued appellees, Koch, H & S Constructors, Inc. ("H & S"), and Stafftek, Inc., for alleged negligence resulting in his injury. The trial court granted summary judgment for all appellees. By two points of error, the Chapas assert the trial court erred in granting summary judgment. We affirm in part and reverse and remand in part.

Koch retained H & S as an independent contractor to provide maintenance work at its plant site. H & S hired Chapa from an employee-leasing company, Stafftek. In December 1991, Chapa was injured on the plant site when he attempted to lift a heavy pipe. He filed a workers' compensation claim and received medical and wage benefits pursuant to a workers' compensation insurance policy issued to Stafftek. The Chapas then sued Stafftek, H & S, and Koch alleging their negligence was a proximate cause of Chapa's injuries. Their allegations against H & S and Stafftek included the failure to: (1) establish procedures for the training of their employees; (2) establish procedures for the supervision of their employees; (3) properly train Chapa and his fellow employees; (4) properly supervise Chapa and his fellow employees; and (5) provide a safe place to work.

The Chapas allegations against Koch included the failure to: (1) establish proper safety procedures; (2) properly supervise its contractors; and (3) provide Chapa a safe place to work. The Chapas alleged appellees' conduct proximately caused them past and future medical expenses, pain and suffering, mental anguish, impairment, disfigurement, lost wages, loss of household services, and loss of consortium.

The appellees filed separate summary judgment motions. Koch's motion stated it owed no duty to Chapa because he was injured as a result of pipe-fitting operations he was performing on its premises as an employee of H & S, an independent contractor, and H & S controlled the details of the work he performed. H & S's motion stated Chapa was its borrowed servant and a covered employee under the Workers' Compensation Act,[1] that H & S was a subscriber under the Act, and that the Act barred his claim against it. Stafftek's motion also stated it was entitled to immunity under the Texas Workers' Compensation Act. In three separate orders the trial court granted summary judgment for the appellees. Appellants appeal all three summary judgments.

In point of error two, the Chapas assert the trial court erred in granting summary judgments for Stafftek and H & S.

Granting of a defendant's motion for summary judgment is proper only when the evidence establishes there is no genuine issue of material fact concerning at least one essential element of a plaintiff's cause of action or conclusively establishes each element of an affirmative defense. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). When reviewing a summary judgment we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex. 1985).

 Texas courts have long recognized the rule that a general employee of one employer may become the borrowed servant of another. *Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582, 583 (Tex.1977); *Lara v. Lile*, 828 S.W.2d 536, 538 (Tex.App.—Corpus Christi 1992, writ denied). When one becomes a borrowed servant, the person who has the right of control to whom he is loaned is recognized as the employer. In that relationship, the employer is responsible for the employee's torts under *respondeat superior* and, if a subscriber to workers' compensation insurance, is exempt from other liability for the employee's injuries under the Texas Worker's Compensation Act. Acts 1917, 35th Leg., ch. 103, part I, §§ 3, 5, 1917 Tex. Gen Laws 269 (repealed 1993) (current version at TEX. LAB. CODE ANN. § 408.001 (Vernon 1996)); *see Denison v. Haeber Roofing Co.*, 767 S.W.2d 862, 864–65 (Tex.App.—Corpus Christi 1989, no writ). The central inquiry is which employer had the right of control of the details and the manner of the employee's work. The test is set forth in *Producers Chem. Co. v. McKay*, 366 S.W.2d 220 (Tex. 1963) as follows:

> If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employers in the manner of performing their services, they remain employees of the general employer and he is liable for the consequences of their negligence.

*Producers Chem. Co.*, 366 S.W.2d at 225. "Where both employers are operating under a contract expressly assigning the right to control, a court can dispose of the borrowed-servant issue without the necessity of considering the facts and circumstances of the project." *Bucyrus–Erie Co. v. Fogle Equip. Corp.*, 712 S.W.2d 202, 204 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (citing *Producers Chem. Co.*, 366 S.W.2d at 226).

 In the instant case, H & S and Stafftek entered into a written employee-leasing agreement in which Stafftek would hire labor for work under H & S's supervision. The agreement stated H & S "will be responsible for supervision and direction of employees."

1. TEX. LAB. CODE ANN. § 407.001 *et seq.* (Vernon 1996 & Supp.1998).

Also, the agreement provided Stafftek would carry workers' compensation insurance on the workers and would obtain an alternate employer endorsement for H & S's benefit. Stafftek fulfilled both requirements.

James Fagan, Stafftek's records' custodian, testified in his deposition that leased employees were included in a workers' compensation policy bought by Stafftek. H & S paid Stafftek the gross wages of all the employees leased to it, the workers' compensation premiums which Stafftek paid to cover the leased employees under a workers' compensation program, and an additional amount as a percentage of the gross payroll to cover the service fee.

Mike Scott, H & S's vice-president, stated in his affidavit that when Chapa was injured he was on Stafftek's payroll and was paid according to the time he worked for H & S. H & S was a subscriber under the Texas Workers' Compensation Act when he was injured. H & S instructed him in the details of the work he was performing. It provided the equipment he used and gave him instructions about what to do on the job. Furthermore, H & S would select the people to be hired including Chapa. Stafftek offered no guidance to any of H & S's workers and was not present on the job site when Chapa was injured. H & S was in control of Chapa's performance of the task being conducted when he was injured. It controlled the hours he worked and when he could take lunch and breaks.

Based upon the contract and the circumstances surrounding Chapa's employment, he was placed under H & S's control in the manner of performing his services. Accordingly, he served as H & S's borrowed servant. *See Producers Chem. Co.*, 366 S.W.2d at 225. Therefore, H & S is exempt from

common-law liability. *See Denison*, 767 S.W.2d at 864.

Further, under the version of the Texas Workers' Compensation Act in place when Chapa was injured, an employer who provided compensation coverage for its employees was insulated from suits for damages for personal injuries.[2] The evidence showed H & S provided for Chapa's workers' compensation coverage.

■ Concerning Stafftek's liability, Stafftek's workers' compensation carrier paid Chapa's medical bills and weekly indemnity benefits. It is uncontroverted Stafftek had a workers' compensation policy in effect when Chapa was injured, and he received benefits under the policy pursuant to the Act. Accordingly, the Act's exclusive-remedy provision barred Chapa's suit against Stafftek. We hold the trial court did not err by granting summary judgments favorable to H & S and Stafftek. Point of error two is overruled.

■ In their first point of error, the Chapas assert the trial court erred in granting summary judgment for Koch. The Chapas' cause of action was based upon negligence, which consists of four elements: (1) a legal duty owed by one person to another; (2) a breach of this duty; (3) the breach was a proximate cause of injury; and (4) actual injury. *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 595 (Tex.1986).[3] As stated above, Koch's summary judgment was predicated upon it not owing a legal duty to Chapa. The existence of a duty is a threshold question of law. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). The nonexistence of a duty ends the inquiry into whether negligence liability may be imposed. *Id.*

**2.** The Act of Dec. 13, 1989, 71st Leg., 2d C.S., ch. 1, § 4.01, 1989 Tex. Gen. Laws 32, *repealed by* Act of May 22, 1993, 73rd Leg., R.S. ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1175 (current version at TEX. LAB. CODE ANN. § 408.001 (Vernon 1996)) provided "[R]ecovery of workers' compensation benefits under this Act is the exclusive remedy of an employee or legal beneficiary against the employer or an agent, servant, or employee of the employer for the death of or a work-related injury sustained by a covered employee." Section 1.03(19) of the 1989 Act defined employer as "a person that makes a contract of hire, that em-

ploys one or more employees, and that has workers' compensation insurance coverage."

**3.** We note that some courts have combined elements three and four to create a three-step analysis. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990) (stating the third element of negligence is "damages proximately resulting from the breach"). We think, however, that the better analysis is the four element approach.

Generally, an owner or occupier of land owes no duty to ensure an independent contractor "safely" performs its work. *Hoechst–Celanese Corp. v. Mendez,* 967 S.W.2d 354, 356 (Tex.1998) (per curiam). However, such a duty may arise if the employer retains "some control over the manner in which the independent contractor's work is performed." *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985). In *Redinger,* the supreme court held that where an owner/occupier "retain[s] the power to direct the order in which the work [is] to be done and to forbid the work from being done in a dangerous manner," it owes a duty to an independent contractor's employee "to exercise [its] supervisory control in a reasonable manner." *Id.*

Several courts of appeals, interpreting *Redinger,* have held that "an employer does *not* incur a duty of care by requiring its contractor to comply with the employer's standard safety practices and applicable laws." *Mendez,* 967 S.W.2d at 356–57 (citing *Campbell v. Adventist Health Sys./Sunbelt, Inc.,* 946 S.W.2d 617, 623 (Tex.App.—Fort Worth 1997, no writ); *Good v. Dow Chem. Co.,* 945 S.W.2d 877, 882 (Tex.App.—Houston [1st Dist.] 1997, no writ); *Davis v. R. Sanders & Assocs. Custom Builders, Inc.,* 891 S.W.2d 779, 782 (Tex.App.—Texarkana 1995, no writ); *Welch v. McDougal,* 876 S.W.2d 218, 223 (Tex.App.—Amarillo 1994, writ denied)). However, in rejecting these courts of appeals' interpretation of *Redinger,* the *Mendez* court held that "consistent with the *Restatement* and [its own] precedent, safety requirements give rise to a *narrow* duty of care" that is "commensurate with the control [the employer] retains over the contractor's work". *Id.* at 357. While on its face this rule appears to add nothing new to the rule enunciated in *Redinger,* the court adds that an employer would incur a duty when, for example: (1) it is aware that the independent contractor routinely violates safety guidelines but fails to take corrective measures, *id.* (citing *Tovar v. Amarillo Oil Co.,* 692 S.W.2d 469, 470 (Tex.1985)), (2) it maintains control over the safety of the premises but not necessarily control over operations, *id.* (citing

*Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 23 (Tex.1993)), or (3) the general contractor provides on-site orders or instructions on the means and methods of job performance. *Id.* (citing *Redinger,* 689 S.W.2d at 418 and *Enserch Corp. v. Parker,* 794 S.W.2d 2, 6 (Tex. 1990)). In other words, there must be a nexus between the control retained and the condition or activity that resulted in the injury. *Id.; see also Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 528 (Tex.1997) (holding that for general contractor to be liable for injuries of an independent contractor's employee, it must have exercised supervisory control over the injury causing activity).

As noted above, a defendant's summary judgment is only proper when it has negated at least one element of the plaintiff's cause of action or conclusively established an affirmative defense. *Martinez,* 941 S.W.2d at 911; *City of Houston,* 589 S.W.2d at 678. We take as true all evidence favorable to the nonmovant and resolve any inconsistencies in their favor. *Nixon,* 690 S.W.2d at 549. In the present case, Chapa testified by deposition that the Koch "safety man" was on the job site to "tell us if we were to do something wrong, not to do it like that—not to go about it that way, to go about it a different way." Also, Chapa stated that, on the day he sustained his injuries, he asked his foreman whether it was safe to pick up the pipe with the intention that Koch's on-site safety man tell him that it would be unsafe to perform the questioned activity. Additionally, Chapa's co-worker, Les Fitch testified that a Koch safety man was on-site to intervene if and when an independent contractor's employees were not doing their job right.

The above testimony raised a fact question as to whether Koch, through its on-site safety man, retained control over the safety requirements of its independent contractor. Additionally, it raised a fact question as to whether Koch's apparent acquiescence to the independent contractor's order to perform an unsafe operation was sufficient to compel Koch to take corrective action as required under *Tovar.*[4] Accordingly, we hold the trial

---

4. The supreme court held in *Tovar* that a general contractor owes a duty where it ignores safety

court erred in granting Koch's motion for summary judgment and reverse and remand this case to the trial court for further proceedings consistent with this opinion. Point of error one is sustained.

The judgment of the trial court is AFFIRMED as to H & S and Stafftek and REVERSED and REMANDED as to Koch.

Dissenting Opinion by Justice J. BONNER DORSEY.

DORSEY, Justice, Dissenting.

I respectfully dissent to the disposition of point of error one. The majority concludes that Chapa's evidence raises two fact issues precluding summary judgment for Koch. The first fact issue is "whether Koch, through its on-site safety man, retained control over the safety requirements of its independent contractor." The second is "whether Koch's apparent acquiescence to the independent contractor's order to perform an unsafe operation was sufficient to compel Koch to take corrective action as required under *Tovar.*" Because I conclude that the evidence does not show that Koch owed a duty to Chapa, I would hold that the trial court did not err by granting summary judgment for Koch.

The issues for consideration are whether Koch, as a general contractor, owed a duty to Chapa, the injured employee of an independent contractor, H & S, and, if so, whether there is evidence in the record to show that Koch breached this duty. A general contractor on a construction site, who is in control of the premises, is charged with the duty to use reasonable care to keep the premises under its control in a safe condition. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 417 (Tex.1985). This duty may subject the general contractor to liability for negligence in two situations: (1) those arising from a premises defect; and (2) those arising from an activity or instrumentality. *Redinger,* 689 S.W.2d at 417; *see Shell Chem. Co. v. Lamb,* 493 S.W.2d 742, 746 (Tex.1973).

The facts in the instant case show that Chapa received his injury due to an activity on the premises while working for an inde-

violations of its independent contractor. *Tovar,*

pendent contractor. Generally an owner or occupier of land does not owe any duty to ensure that an independent contractor performs its work in a safe manner. *Abalos v. Oil Dev. Co.,* 544 S.W.2d 627, 631 (Tex.1976). However a duty may arise when the employer retains "some control over the manner in which the independent contractor's work is performed." *Redinger,* 689 S.W.2d at 418.

*Redinger* is a case in which the supreme court held an employer of an independent contractor liable because the employer retained a right of control over the contractor's work and did not use reasonable care in exercising that control. In that case Living, Inc. (Living) was the general contractor on a construction site. Bobby Baird was a subcontractor, and Louis Redinger was an employee of a plumbing subcontractor. Living's superintendent, David Yargo, was preparing the site for a subcontractor to pour concrete. When the concrete arrived piles of dirt placed by Baird blocked the route to the work area. Yargo ordered Baird to move the dirt. As he was moving the dirt the blade of his tractor crushed Redinger's finger. Redinger sued Living and Baird for damages resulting from the injury. The trial court rendered judgment for Redinger based on jury findings that Baird was fifty percent negligent and that Living was fifty percent negligent in allowing Baird to operate his tractor while Redinger was working in the area and also for failing to warn. The court of appeals reversed because of jury misconduct, and remanded the cause for a new trial. On appeal to the supreme court Living argued that because it was a general contractor it did not have a duty to Redinger, an employee of a subcontractor. The supreme court adopted the rule enunciated in the Restatement (Second) of Torts, which states:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

692 S.W.2d at 470.

RESTATEMENT (SECOND) OF TORTS § 414 (1977), quoted in *Redinger*, 689 S.W.2d at 418. Quoting the Restatement the *Redinger* court stated

> This rule applies when the employer retains some control over the manner in which the independent contractor's work is performed, but does not retain the degree of control which would subject him to liability as a master. RESTATEMENT (SECOND) OF TORTS § 414, comment a (1965). The employer's role must be more than a general right to order the work to start or stop, to inspect progress or receive reports. *Id.*, comment c (1965). He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others. *Id.*, comment a (1965).

*Redinger*, 689 S.W.2d at 418.

The court held that Living owed a duty to Redinger to exercise supervisory control in a reasonable manner because it retained the power to direct the order in which the work was to be done and to forbid the work from being done in a dangerous manner. *Redinger*, 689 S.W.2d at 418. Living, through its superintendent, Yargo, ordered a subcontractor, Baird, to move the dirt. Yargo's command showed that Living retained control over the subcontractor, who injured Redinger.

The crux of Chapa's suit is that Koch, by having a safety man on the job site, assumed a duty of care to the employees of its subcontractor, H & S, and that it breached that duty. My disposition of this assertion is guided by the rules announced in *Redinger* along with the Texas Supreme Court's recent decision in *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354 (Tex.1998) (per curiam). In that case Celanese hired a subcontractor, Mundy, to do work at a Celanese facility. Jesse Mendez, a Mundy employee, climbed over a tool box to position himself on the floor between the tool box and a wall to help his co-workers remove conduit from a Celanese facility. After he completed the task he stepped on the tool box shelves to climb back over the tool box. He lost his footing and fell to the floor. Celanese contractually required Mundy to train its employees in Celanese's safety-related rules and regulations, observe federal safety practices and regulations, and take all necessary precautions to keep its work areas free of safety hazards. The contract further provided that Celanese had the right to inspect Mundy's facilities and operations at all times to ensure compliance with Celanese's safety-related requirements. Mendez sued Celanese for negligence relating to his injuries, and the trial court granted summary judgment for Celanese. The appellate court reversed, and Celanese appealed to the Texas Supreme Court. Mendez argued to the supreme court that Celanese, through its safety regulations, retained enough control over the manner and means by which Mundy employees performed their maintenance services to incur a duty to use reasonable care under section 414 of the Restatement.

The supreme court specifically addressed what duty, if any, is owed by a general contractor that promulgates, and retains the right to ensure compliance with, general safety guidelines. The *Mendez* court cited numerous appellate decisions which have held an employer does not incur a duty of care by requiring its contractor to comply with the employer's standard safety practices and applicable laws. Contrary to these opinions the supreme court concluded that a general contractor which promulgates safety rules and requirements does assume a narrow duty of care, *but that duty is commensurate with the control it retains over the independent contractor. Mendez*, 967 S.W.2d at 357 (Emphasis added). The court further noted the importance of a nexus between an employer's retained supervisory control and the condition or activity that caused the injury. *Mendez*, 967 S.W.2d at 357 (citing *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523 (Tex.1997)). The scope of the duty is limited to the scope of the employer's

retained supervisory control. *Mendez,* 967 S.W.2d at 357. Applying this rule to the facts before it the *Mendez* court found that there was no evidence that the rules or requirements themselves unreasonably increased the probability and severity of injury, and, consequently, there was no basis for liability as a matter of law.

Thus the rule announced by the *Mendez* court is that when a general contractor/employer promulgates a safety rule or regime it assumes a narrow duty that any safety requirements and procedures it promulgated did not unreasonably increase, rather than decrease, the probability and severity of injury. *Mendez,* 967 S.W.2d at 357–58. If the rules or regulations do not unreasonably increase the probability and severity of injury no duty is violated. If, however, the general contractor is aware that a subcontractor is ignoring safety guidelines, or if the general contractor is involved in giving on-site orders or directing the manner of performance, then it may be charged with a heightened duty of care, to either take corrective measures or otherwise protect workers from hazards associated with their job. *Mendez,* 967 S.W.2d at 357 (citing *Tovar v. Amarillo Oil Co.,* 692 S.W.2d 469, 470 (Tex.1985) (per curiam); Enserch Corp. v. Parker, 794 S.W.2d 2, 6 (Tex. 1990); and *Redinger,* 689 S.W.2d at 418).

In the instant case Chapa argues Koch did not produce any summary judgment evidence to show it did not have the power to forbid work from being done in a dangerous manner. I disagree with this assertion. Koch's evidence included the affidavit of John Mineo, its contract administrator. Mineo stated that Chapa was an employee of H & S. On the date Chapa was injured the work being performed by H & S on Koch's premises was pursuant to a Field Service Contract. The work being performed by Chapa, as an H & S employee, was controlled and directed by H & S.

The Field Service Contract provided, in relevant part: "At all times the contractor [H & S] shall perform as an independent contractor and will assume sole responsibility for any action whatsoever of his employees. . . ." At least one court has treated similar clauses as conclusive evidence that a general contrac-

tor did not retain control. *See Hammack v. Conoco,* 902 S.W.2d 127, 130 n .1 (Tex.App.—Houston [1st Dist.] 1995, writ denied).

Chapa's deposition testimony showed that any direction or control he received on the date he was injured when lifting the pipe came from an H & S foreman.

The majority relies on the following deposition testimony of Chapa and a co-worker, Les Fitch, to create fact issues in this case. Chapa testified by deposition that the Koch "safety man" was on the job site to "tell us if we were to do something wrong, not to do it like that—not to go about it that way, to go about it a different way." Chapa stated on the day he injured himself he asked his foreman whether it was safe to pick up the pipe with the intention that Koch's on-site safety man would tell him that it would be unsafe to perform the questioned activity. Les Fitch testified that a Koch safety man was on-site to intervene if and when an independent contractor's employees were not dong their job right.

I believe that Chapa's and Fitch's statements do not show a degree of control exercised or retained by Koch necessary to create any liability on its part for Chapa's injuries. Even if Chapa is correct that Koch owed him a duty of care his evidence only showed, at most, that Koch had assumed the narrow duty articulated by the supreme court in *Mendez*—a duty that any safety requirements and procedures it promulgated did not unreasonably increase, rather than decrease, the probability and severity of injury. *See Mendez,* 967 S.W.2d at 357–58. Had Koch, for instance, assumed the duty to train and actually supervise H & S' employees Koch may have assumed a heightened duty of care. Chapa's and Fitch's testimony is not evidence of an exercise of control over their work. Their comments are vague and do not indicate that Koch ever told them what to do, or that Koch had anything to do with the performance of particulars of Chapa's contracted-for work. According to *Redinger* every general contractor has to tell the subcontractor what to do, in general terms, and may do so without subjecting itself to liability. *Redinger,* 689 S.W.2d at 418. This right does not create a duty, nor expand the scope of

the duty beyond that as expressed in *Mendez*.

Chapa's and Fitch's comments that Koch would give instructions about how they should perform the work are likewise insufficient to create a fact issue. Chapa did not present any evidence establishing a nexus between any alleged instruction given by Koch, or any of Koch's rules, and his injury. Therefore he failed to establish evidence of a causal relationship between any occasional instruction and his injuries. In other words he did not present any evidence which showed that any of Koch's rules, regulations, or procedures purportedly in effect at the time he received his injury, contributed in any way to his injury. There is no evidence to show that Koch ever sought to control those aspects of job performance on a day-to-day basis. No evidence showed Chapa's task of lifting the pipe was an obvious danger which Koch had the right to control. Also, there is no evidence showing that any Koch employee ordered Chapa to lift the pipe which led to his injury.

The majority relies on *Tovar v. Amarillo Oil Co.*, 692 S.W.2d 469, 470 (Tex.1985) (per curiam). In that case the supreme court held that an oil company breached a duty of care to a drilling contractor employee by not exercising its contractual right to suspend drilling operations when it became aware that the drilling contractor was violating a specific, critical safety provision in the drilling contract. *See Tovar*, 692 S.W.2d at 470. In the instant case Chapa offered no evidence to show that Koch was aware that H & S was violating any safety provision when he allegedly received his injury.

I would hold that Koch's act of having a safety man on the premises did not impose a duty of care on itself to ensure that Chapa did nothing unsafe. Thus as a matter of law there is no basis for the majority to impose liability on Koch for the injury Chapa sustained. I would overrule point one and affirm the trial court's grant of summary judgment for Koch.