## HAILEY v. MISSOURI, K. & T. R. R. CO.
### No. 12928.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 3, 1934.

Rehearing Denied April 6, 1934.

Houtchens & Houtchens and J. Harold Craik, all of Fort Worth, for appellant.

Thompson & Barwise, of Fort Worth, for appellee.

POWER, Justice.

Edward Hailey instituted this suit against the Missouri, Kansas & Texas Railroad Company of Texas for damages. The defendant railroad company has owned and operated for a number of years a line of railway in and through the city of Fort Worth. It has in Fort Worth and in the vicinity of the accident involved a main line and various switching and industry tracks. These tracks cross at grades both South Main and Capps streets. It was proposed to construct an underpass for defendant's various lines, extending from a point on South Main street to a point on Capps street. The underpass is not located on either South Main or Capps street, but runs across the corner of the intersection of these two streets. The work of constructing the underpass was done by excavating the grade of the railroad company's various tracks, and during all of the time of this excavation work the railroad company continued to operate its trains in the usual and ordinary way.

The railroad company entered into a contract with the Frank Parrott Construction Company to build this underpass. The Parrott Construction Company, according to the pleadings of the plaintiff, was an independent contractor and it is shown by the evidence that it removed all of the dirt necessary for the construction of this underpass and employed all of the men constructing said underpass, including Edward Hailey, plaintiff herein, and at the time of Hailey's injury the work had proceeded to the point that an excavation of some 20 feet in depth, or more, had been constructed under the railroad tracks. This work had all been done by the employees of the Parrott Construction Company, including Hailey. It was shown that the walls of the excavation were straight up and down, or nearly so; that the walls were not braced and appellant, while working at the bottom of this excavation, was injured by a large amount of dirt falling on him, and he pleads that the railroad company was negligent (1) in failing to furnish him a safe place to work; (2) in failing to warn him of the danger of the embankment caving in; (3) in failing to inspect the premises; (4) in failing to brace the walls; (5) in operating trains over the excavation; (6) in the use of its tools in working on its tracks.

The pleadings were presented, evidence heard, and when the plaintiff rested his case, the defendant railroad company moved for an instructed verdict. The court granted this request, instructing the jury to re-

turn a verdict for the defendant railroad company, and Hailey has appealed from this judgment.

■ The crucial point in this case is whether or not, under the facts, the railroad company was under duty to furnish plaintiff a safe place to work.

Appellant presented two witnesses who testified as to the manner and way the accident happened. Appellant himself testified that he was working for the Parrott Construction Company, having been employed by the superintendent of said construction company, and that he received his pay from the construction company; that when he first went on the ground there was no underpass or crossing of any kind at the point where the underpass was to be constructed; that the railroad lines were on a dump some 6 or 7 feet high, and that Mr. Parrott of the Parrott Construction Company, as well as appellant himself, began cutting the excavation under the railroad tracks; that at the time of the injury the walls, by reason of such excavation, were some 18 to 20 feet high; that the employees of the construction company had done all the excavating, and that he had helped to do it; that the construction company used drag lines, picks, shovels, and dynamite in doing the excavating work; that the railroad tracks extended over the underpass and trains passed over the underpass every day; that just before the injury, when a train was passing over the tracks, plaintiff stepped out to one side and after it passed over in about ten seconds he went back under the tracks where he had been working; that about the time he picked up his tools some one about the tracks holloaed, "look out"; that he wheeled around and a clod of dirt hit him in the back; that he fell down in the pier hole and the dirt rolled in on him; that the cave-in came from the top; that a railroad inspector told him that when a train came over to step to one side but after the train had gone over everything would be safe; that he did that; that this warning was given at times when trains had passed over.

Another witness, Will Hand, testified that he was employed by the Parrott Construction Company; that the walls of the underpass were straight up and down at the time of appellant's injury; that it was usual for the railroad company to switch over the underpass; that some three trains in the morning and four or five in the evening cross over the underpass while in construction; that the Parrott Construction Company mov-

ed the dirt from the underpass and used trucks, drag lines, and dynamite in doing their work; that the construction company moved all of the dirt, did all of the digging, and that there was no bracing or other protection to keep the walls from falling down; that the walls had been sloped in some places but had not been sloped under the trains where the injury occurred; that where the walls had been sloped the work had been done by the Parrott Construction Company; that just before the injury a switch engine with about 12 or 15 box cars passed over the tracks; that the train was operated over the tracks and about the tracks for some time, slowing up, stopping, and then pulling up again; that as well as he could describe the movements of the train, they were in jerks, sudden stopping, and sudden starting.

It is said in the case of Mansfield Construction Co. v. Gorsline (Tex. Com. App.) 288 S. W. 1067, 1070, that:

"An essential element of negligence is a duty; if there is no duty there can be no negligence. To constitute negligence there must appear duty on the part of the plaintiff in error to the party injured and legal nonperformance of that duty."

The case of Louisville & N. R. Co. v. Smith's Adm'r, 134 Ky. 47, 119 S. W. 241, 244, is applicable here. It is said:

"The making of any excavation is necessarily attended with some danger. The sides of the ditch or cut are liable to slip or fall in. The extent of this liability is dependent upon many circumstances—the amount of moisture in the ground, the character and condition of the soil, the slant of the walls, or depth of the cut. All of these matters have to be taken into account. So likewise in making an excavation under the track of a railroad, where the ground on either side is subjected to heavy pressure by the passage of trains over it, the liability that the sides will slip or cave in is increased. These matters are common knowledge to those engaged in that character of business, and in the prosecution of the work are necessarily taken into account and consideration. If the contractor failed to give the side of the cut the proper and necessary slope, the fault was his, and not that of his employer, and, if such failure caused the cave-in which resulted in the killing of appellee's intestate, the contractor alone is answerable therefor. The only difference between excavations made beneath a railroad track and elsewhere is that the sides of the cut under the railroad track are subjected to pressure when trains pass overhead. The fact of this pressure must be and necessarily is taken into consideration in determining the slope that should be given to the sides of the cut. It is a known quantity, and can be dealt with as any other known element that tends to increase the hazard of the business."

It is the position of appellant, Hailey, that it was the duty of the railroad company, although the work was being done by an independent contractor, to see that the work of excavating was carried on in such a way and manner that the appellant would not be injured, and that it was the duty of the railroad company to furnish appellant a safe place to work, and cites a number of cases, among them being West Texas Utilities Co. v. Renner (Tex. Com. App.) 53 S.W.(2d) 451. There the damages were sustained by Renner in the employ of Mosher Steel & Machinery Company, an independent contractor engaged in the erection of an addition to a building owned by the utilities company. The ground of negligence alleged against the utilities company was in maintaining high voltage wires in an uninsulated condition at and near the place where Renner was injured. In this case it was held that the utilities company did owe to the employees of the independent contractor a duty to furnish a safe place to work and to warn workmen in the employ of another working on the premises. But it seems to the court that this case is distinguishable from the case now before the court. The high voltage wires were present when Renner went to work, the dangerous situation was present at the time he was invited on the premises; neither he nor the independent contractor under whom he was working created the dangerous situation; it was not changing a condition that brought about the injury, as in the case under consideration. When Hailey went to work, there was no danger of a cave-in because there was no excavation; at the time the railroad company was under no duty to furnish him a safe place to work or to give him any warning; the danger of a cave-in was brought about by appellant, Hailey, and his associates; the place where he worked was one which he produced; this was not true in the Renner Case—there the danger was present at the time he went to work and continued during all the time that he did work; it was a latent present danger and it appears to this court that this case and other similar cases cited by appellant are distinguishable from the case under consideration.

This distinction seems also to be recognized in the case of Montgomery v. Houston Textile Mills (Tex. Com. App.) 45 S.W.(2d) 140, 142. In this case Montgomery sued the Textile Mills to recover damages caused by the alleged negligence of said Textile Mills. He alleged that while working for an independent contractor, A. T. Vick Company, and while placing electrical wiring in a building belonging to the Houston Textile Mills, he stepped upon a nail which had been negligently dropped by the Houston Textile Mills or its agents, and was injured; his allegations of negligence being the failure to furnish a reasonably safe place to work and not removing the plank in which the nail was located from the premises where the plaintiff in error was invited to perform for said Textile Mills, and in not warning him of the danger, and other allegations of negligence that are unnecessary here to note. The Commission of Appeals, in an opinion approved by the Supreme Court, after reference to such cases as Gulf, C. & S. F. Ry. Co. v. Drennan (Tex. Civ. App.) 204 S. W. 691, Armour & Co. v. Dumas, 43 Tex. Civ. App. 36, 95 S. W. 710, and other cases, the law of which seems applicable in this case, used this language:

"When considered in the light of the facts involved in the cases above cited, no fault is found with the rule announced in those decisions. The rule that the master or owner is not liable for transitory dangers arising during the construction of a building and incidental to and in connection with the construction of the building rests upon sound legal principles."

The court proceeded thereafter to distinguish the case under consideration from the transitory danger cases, and likewise distinguished it from the case now under consideration, in using this language:

"The evidence in this case tends to show and raises the issue that plaintiff in error was exposed to an injury not arising during the construction of the building nor incidental to and in connection with the construction of same. Plaintiff in error being an employee of A. T. Vick Company, who had a contract with defendant in error to do certain work in the warehouse, and in pursuance of that contract was rightfully there to do his work, and the evidence raising the issue that it was on account of the acts of the employees of defendant in error in uncrating the machinery in storage for the use and benefit of defendant in error not connected directly or indirectly with the construction of the building, which acts of negligence were the proximate cause of the injury sustained by plaintiff in error, invokes the rule that the owner of the building owed him the duty of exercising ordinary care to furnish him a reasonably safe place to work and that the owner is not immune from liability for the acts of negligence of his employees causing his injury."

In the case just quoted from the owner did something, namely, uncrated certain machinery on the premises which had no relationship to the work of the independent contractor and which was not anticipated nor taken into consideration by the independent contractor, which is not true in the case under consideration.

This court is of the opinion that appellee was not negligent in failing to furnish appellant a safe place to work, or in failing to warn him of the embankment caving in, or in failing to inspect the premises, or in failing to brace the walls.

This brings us to the questions as to whether or not appellee was negligent in operating trains over the excavation, or in the use of its tools in working on its tracks. The evidence shows that for some months appellant had worked creating and building the underpass and that during that time some three to five trains per day during working hours had crossed over the underpass, many of them switching backward and forward; that on the morning of the injury to appellant a switch engine with about 12 or 15 cars passed over the tracks and about the point of injury for some time, slowing up, stopping, and pulling up again; that as well as the witness could describe, the movements of the train were in jerks, sudden stopping, and sudden starting. Nothing is shown that is unusual or out of the ordinary in the operation of the trains either on the morning of the injury or during the months before. The evidence shows that at and near a point where the excavation was made and where appellant was under the railway lines "the tracks had settled" and that appellee raised the tracks using jacks, step jacks, and other tools, raising the tracks by means of these tools and placing cross-ties thereunder. No showing was made, however, that in raising the tracks any unnecessary thing was done or that the tools were used otherwise than in a usual and ordinary manner.

It appears to the court that appellant's injury was caused by the risks ordinarily in-

cident to the task undertaken in behalf of an independent contractor; that there is no foundation in the evidence for a finding of negligence on the part of appellee and the case is affirmed.