**SHELL CHEMICAL COMPANY et al.,**
Petitioners,

v.

Adele L. LAMB et al., Respondents.

No. B–3311.

Supreme Court of Texas.

May 2, 1973.

Rehearing Denied May 30, 1973.

Baker & Botts, Robert J. Malinak, Vinson, Elkins, Searls & Smith, Gerald P. Coley, Fulbright, Crooker & Jaworski, Jerry V. Walker and Rufus Wallingford, Houston, for petitioners.

Garrett & Letbetter, Tom R. Letbetter, and George Payne, Mounger & Whittington, Rex Mounger, George D. Neal, Houston, for respondents.

McGEE, Justice.

Adele L. Lamb, individually and as next friend for Robin L. Lamb, and Mila Jean Lamb Thompson, joined by her husband, Kenneth D. Thompson, brought suit in the district court against Shell Chemical Company, Shell Oil Company, and H. K. Ferguson Company for the wrongful death of Edward N. Lamb. These plaintiffs, as the community survivors of Edward N. Lamb, also sought recovery for damages for personal injuries sustained by Edward N. Lamb. Shell Chemical Company, by way of a cross action, sought contractual indemnity against the H. K. Ferguson Company. The H. K. Ferguson Company brought the Fisk Electric Company into the suit and sought contractual indemnity against Fisk as a third party defendant.

In 1966 a Shell plant was being constructed on Shell's property near Deer Park in Harris County, Texas. The H. K. Ferguson Company, hereinafter called Ferguson, was the general contractor for this project. The Fisk Electric Company, hereinafter called Fisk, was an electrical subcontractor under Ferguson. The deceased, Edward N. Lamb, was an employee of Fisk.

On June 7, 1966 while working on the Shell premises under the supervision of Fisk, Edward N. Lamb fell from a ladder and suffered injuries from which he died

ten (10) days later. Plaintiffs alleged that the deceased, while working as an electrician and in the course of installing electric wiring, conduit, pipes and supporting devices, received an electrical shock which caused him to lose his balance and fall from the ladder.

Plaintiffs alleged that various acts of negligence on the part of Shell and Ferguson proximately caused the occurrence made the basis of the suit.

The district court withdrew the case as it pertained to Ferguson from the jury and rendered judgment that plaintiffs take nothing from Ferguson. Based on the jury's verdict favorable to Shell, judgment was rendered that plaintiffs take nothing from Shell Chemical Company and Shell Oil Company. Judgment was also rendered that Shell take nothing against Ferguson and that Ferguson take nothing against Fisk.

The court of civil appeals reversed and remanded. 476 S.W.2d 885. We reverse the judgment of the court of civil appeals, and we affirm the judgment of the district court.

■ The court of civil appeals reversed the judgment of the trial court that plaintiffs take nothing against Shell, and remanded the cause holding that the trial court erred in allowing Fisk six peremptory jury strikes. Petitioners Shell and Fisk contend that the court of civil appeals erred in so holding. Rule 233, Texas Rules of Civil Procedure, provides that:

"Each party to a civil suit shall be entitled to six peremptory challenges in a case tried in the district court. . . . "

However, the mere fact that one is named as a party to a lawsuit does not in itself entitle him to six peremptory strikes. In order for each of two defendants to be en-

titled to the six peremptory strikes allowed by Rule 233, it must · appear from the pleadings that the interests of those defendants are antagonistic on an issue with which the jury may be concerned.[1] See Retail Credit Company et al. v. S. H. Hyman, 316 S.W.2d 769 (Tex.Civ.App.1958, writ ref'd); William J. O'Day v. Sakowitz Brothers, 462 S.W.2d 119 (Tex.Civ.App. 1970, writ ref'd n. r. e.); M. L. Mayfield Petroleum Corporation v. Kelly, 450 S.W. 2d 104 (Tex.Civ.App.1970, writ ref'd n. r. e.); Brown & Root, Inc. v. Gragg, 444 S. W.2d 656 (Tex.Civ.App.1969, writ ref'd n. r. e.).

The court of civil appeals recognized the above principle and cited the *Retail Credit* case as authority for its holding. We disagree with the court's conclusion that there was no showing that Ferguson and Fisk were antagonistic as to a matter with which the jury was to be concerned. In its pleadings setting forth the third party action against Fisk, Ferguson alleged that:

"Under the terms of the subcontract being performed at the time of the accident, Fisk promised to indemnify Ferguson against all claims resulting from injury, including death, sustained by any employee of Fisk arising from any cause or for any reason."

Fisk's answer to that pleading contained a general denial.

■ It is well settled that a general denial puts the plaintiff (in this case, Ferguson, third party plaintiff) on proof of every fact essential to his case and issue is joined on all material facts asserted by plaintiff (in this case, Ferguson, third party plaintiff), except those which are required to be denied under oath. Trevino v. American Nat. Ins. Co., 140 Tex. 500, 168 S.W.2d 656 (1943). An essential element of Ferguson's cause of action against Fisk was that Fisk was performing its subcontract with Ferguson at the time of Lamb's

1. It should be noted that this case was instituted prior to the amendment to Art. 2094 which makes it the duty of the trial court to equalize the number of peremptory challenges in accordance with the ends of justice.

accident. Fisk's general denial joined issue on this material fact. This dispute was not submitted to the jury because it became moot when the trial court directed a verdict for Ferguson.

■ Shell's First Amended Original Answer reads in part as follows:

"Alternatively, if Mr. Lamb did not fail to exercise ordinary care, then the occurrence in question was caused *solely* by the negligence of a third party or parties over whom these defendants had absolutely no control." [Emphasis added].

This pleading is sufficient to raise the issue of whether Lamb's accident was caused solely by the negligence of Fisk. Agnew v. Coleman County Electric Cooperative, Inc., 153 Tex. 587, 272 S.W.2d 877 (1954).

The court of civil appeals wholly fails to make any mention of the antagonistic interest between Fisk and Shell or the issues that were actually submitted for the jury's determination as to the negligence of Fisk, the negligence of Shell and the *sole* negligence of Shell, together with an issue as to the negligence of Ferguson or Fisk (Special Issues 23 through 37; Special Issue 28A).

■ Shell sought no affirmative relief against Fisk. Nevertheless, Shell's pleading, and those of Respondents (that Ferguson was negligent), alleged issues of fact that could have resulted in ultimate liability to Fisk (because of its indemnity agreement with Ferguson if answered in the affirmative). For that reason the trial court correctly allowed Fisk six peremptory challenges. Tamburello v. Welch, 392 S.W.2d 114 (Tex.1965).

At this early stage of the case, the time at which counsel for the respective parties examine prospective jurors and make their strikes, it must be said that under the pleadings the interests of Ferguson and Fisk and Shell were antagonistic issues with which the jury might have been concerned. Tamburello v. Welch, supra.

Having determined that the district court did not err in allowing Fisk six peremptory strikes, it becomes unnecessary to discuss Petitioners' contention that such action of the trial court, if error, was harmless. See M. L. Mayfield Petroleum Corporation v. Kelly, supra, and Ralston v. Toomey, 246 S.W.2d 308 (Tex.Civ.App.1951, writ ref'd n. r. e.).

The court of civil appeals held that the trial court erred in instructing the jury to return a verdict for Ferguson. Prior to a discussion of Petitioner Ferguson's point that the court of civil appeals erred in so holding, a factual background must be set forth.[2] The space in which Lamb was working when he fell from the ladder was under the control of Ferguson, i. e., Ferguson's work in that area had not been completed, and the area had not been turned over to Shell. An electric switchboard was located in another space from which power lines led to various areas of the Shell construction. The space containing the central switchboard was under the control of Shell, and at the time of this occurrence, Shell was conducting an employee training program utilizing portions of the switchboard.

One aspect of the central switchboard was the operation of an alarm system. Alarm units were to have been placed at various locations in the building, and wires connected to these alarm units were to lead back to and terminate at the switchboard. A single switch on the central board sent power to each of the units in the alarm system. Shell had accepted control of the alarm switch. In the course of its training program, Shell employees activated the switch on occasion, thereby energizing all alarm system wires which were terminated into the switchboard.

---

2. For a more detailed report of the facts see the opinion of the court of civil appeals at 476 S.W.2d 885.

In the space in which Lamb was working there was an alarm system wire, one end of which was terminated at the switchboard. Subsequent to Lamb's injury, it was discovered that this wire was not connected to an alarm unit, but instead, it was coiled at its loose end and taped to a pipe in the particular area in which Lamb was working. The jury found that Lamb sustained a shock which caused him to fall from the ladder. The jury failed to find that a Shell employee turned on the switch on the morning of Lamb's injury.

The evidence conflicted as to the exact nature of the work being performed by Lamb on the day of this occurrence. Vestal, a Fisk employee and the supervisor of Lamb, testified that when Lamb was assigned the day's work, this alarm circuit was properly terminated at the switchboard on one end and was connected to an alarm unit in the space in which Lamb was working. Vestal testified that he had assigned to Lamb and Lannon (another Fisk employee) the task of relocating an already completed alarm circuit. Lannon, Lamb's co-worker, testified that he and Lamb were assigned the task of installing this particular alarm circuit, and that they were in the process of doing so when Lamb's injury occurred. Lannon's version of the facts was that he and Lamb had previously routed the wire from the general area of the switchboard to the space in which they were working on the day of Lamb's injury, but that they had neither connected the wire to the switchboard nor to the alarm unit. Because they had not connected the wire to the switchboard and because no one else would have done so knowing that the work on this particular circuit had not been completed, Lannon apparently assumed that there was no danger with regard to this exposed end of the alarm circuit wire.

Although the space in which Lamb was injured was under the control of Ferguson, it is clear that any work to be done with regard to installing or relocating this alarm circuit was completely within the work province of Fisk, Ferguson's electrical subcontractor.

■ Petitioner Ferguson contends that it owed no duty to warn Lamb of this dangerous condition, and that the court of civil appeals erred in holding that there was a jury issue as to whether or not a reasonable inspection by Ferguson would have revealed the danger. As noted by the court of civil appeals, the duty owed by a general contractor to employees of its subcontractor is that duty owed by an occupier of land to a business invitee. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425 (1950). The cases in this area fall into two distinct lines. First, there are those cases in which the dangerous condition existed on the premises at the time of the invitee's entry for business purposes or in which the dangerous condition was created by someone or through some means unrelated to the activity of the injured invitee or his employer (subcontractor/invitee). Secondly, there are those cases in which the dangerous condition arose out of the performance of the work for which the subcontractor/invitee was employed. We will briefly analyze the law as it applies to each of these situations.

In Smith v. Henger, supra, the dangerous condition was one which existed on premises under the control of the general contractor at the time the subcontractor and the subcontractor's employees entered upon the premises. The court held that the general contractor owed a duty to an employee of a subcontractor to use reasonable care to keep the premises safe which included a duty to inspect the premises for dangerous conditions.

■ In this first situation, in which the danger did not arise through the work activity of the subcontractor/invitee, the subcontractor/invitee and his employees are under no duty to inspect the premises for concealed dangers. Rather, the invitees may, in law, anticipate that the general contractor will discharge his duty to inspect the premises and warn of any dangerous condition which is not open and ob-

vious. Robert E. McKee, General Contractor, Inc. v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954). The rationale of the occupier's duty in this situation to his business invitee is the occupier's superior position to know of or discover hidden dangerous conditions on his premises. Western Auto Supply Company v. Campbell, 373 S.W.2d 735 (Tex.1963); Hall v. Medical Bldg. of Houston, 151 Tex. 425, 251 S.W.2d 497 (1952). When a hidden dangerous condition exists on premises under the control of a general contractor at the time a subcontractor enters, or exists through some means other than the subcontractor's work activity on the premises, the general contractor's duty to its business invitee/subcontractor and the employees of that subcontractor may be discharged by an adequate warning to the subcontractor or one supervising his work. Delhi-Taylor Oil Corp. v. Henry, 416 S.W.2d 390 (Tex. 1967).

When the hidden dangerous condition is not one falling into the first type but rather is one arising out of the work activity of the injured invitee or his employer (subcontractor/invitee), a different situation is presented. In Pence Const. Corp. v. Watson, 470 S.W.2d 637 (Tex.1971), we held that the general contractor owed no duty to warn the subcontractor or his employee of the dangerous condition (a vent opening on the roof of a building through which the employee fell) created by other employees of the same subcontractor. In Hailey v. Missouri, K. & T. RR. Co., 70 S.W.2d 249 (Tex.Civ.App.1934, writ ref'd), an employee of an independent contractor constructing a railroad underpass was injured by a cave-in. The opinion of the court recites the facts that when Hailey went to work there was no danger of a cave-in because there was no excavation; the danger of the cave-in was brought about by employees of the contractor; the place where the injured employee worked

was one which he produced. In holding that the occupier was under no duty to warn the injured employee of the danger of a cave-in, the court distinguished those cases in which a dangerous condition existed on the premises prior to the entry and commencement of work by a business invitee.[3]

The dangerous condition to which Lamb was subjected was the existence of an exposed wire coupled with the termination of the other end of that wire into a switchboard which resulted in the occasional possibility (when the alarm system switch was turned on at the switchboard) of giving an electrical shock to a person with whom the wire came in contact. This dangerous condition did not exist on the premises at the time Fisk and its employees entered the premises as Ferguson's business invitees. There is no allegation that the dangerous condition was created by any act of Ferguson.

■ Although there is no evidence that any Fisk employee actually knew of the danger, the evidence warrants the conclusion that this danger arose out of the performance of the electrical work for which Fisk was employed. The facts of this case bring it within the second line of cases, and unless there is some basis for an exception, the proposition that a general contractor owes no duty to warn an employee of its subcontractor of a hidden dangerous condition arising out of the performance of the subcontractor's work would end the matter.

In Pence Construction Corp. v. Watson, supra, the court indicated that there may be such exceptional circumstances by stating as follows:

"The general contractor is ordinarily not required to tell one crew or employee of a subcontractor what another crew or employee of that same subcontractor has done in the performance of the work for

3. *See also* Humphreys v. Texas Power & Light Co., 427 S.W.2d 324 (Tex.Civ.App. 1968, writ ref'd n. r. e.); Perez v. Hernandez, 317 S.W.2d 81 (Tex.Civ.App. 1958, writ ref'd n. r. e.), and Humble Oil and Refining Co. v. Bell, 180 S.W. 2d 970 (Tex.Civ.App.1943, writ ref'd w. o. m., 142 Tex. 645, 181 S.W.2d 569, 1944).

which the subcontractor is employed. See Hailey v. Missouri K. & T. RR., 70 S.W.2d 249 (Tex.Civ.App.1934, writ ref.); Humphreys v. Texas Power & Light Co., 427 S.W.2d 324 (Tex.Civ. App.1968, writ ref. n. r. e.); Moore v. Texas Company, 299 S.W.2d 401 (Tex. Civ.App.1956, writ ref. n. r. e.) *It may be that under some circumstances there would be a concealed danger or special problem which, though created by a subcontractor's employee, the general contractor should take extra measures to call to the attention of other employees of that subcontractor.*" [Emphasis added].

The court of civil appeals concluded that the facts of the instant case fell within the "concealed danger or special problem" circumstances set forth in the above quoted dictum of this court, and remanded this case for a fact finding as to whether or not a reasonable inspection by Ferguson would have revealed the concealed danger. We disagree with that conclusion, and we hold that the instant case does not present one of those circumstances in which there is a duty on the general contractor to take "extra measures" to warn an employee of a subcontractor of a danger arising from the performance of the subcontractor's work.

The dangerous condition in the instant case was peculiar to the technical specialty for which Fisk was employed. Fisk had a duty to perform its work safely, and Fisk was in a superior position to prevent the existence of, to inspect for, and to eliminate or warn its employees of this dangerous condition. This circumstance is not one of those in which a general contractor is required to take the extra measures referred to in the *Pence* case. Instead, this is a circumstance in which the general contractor is not required to anticipate the failure of its subcontractor to discharge its duty to its own employees.

Because there was no duty on the part of Ferguson to warn Lamb of this danger-

ous condition, the trial court properly directed a verdict for Ferguson.

The judgment of the court of civil appeals is reversed, and the judgment of the trial court is affirmed.