

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-12-00233-CV

**RIPPY INTERESTS, LLC,**

**Appellant**

**v.**

**WILLIAM L. NASH, JOHN D. NASH,**
**CHARLES NASH, AND US KINGKING, LLC,**

**Appellees**

_____

**From the 12th District Court**
**Leon County, Texas**
**Trial Court No. 0-11-44**

_____

## O P I N I O N

_____

This is a summary-judgment appeal. The trial court granted the amended

motion for summary judgment of Appellee US KingKing, LLC (KingKing) and denied

the cross-motion for summary judgment of Appellant Rippy Interests, LLC (Rippy).[1]

Rippy appeals, complaining that the trial court erred in granting KingKing's amended

motion and in denying Rippy's cross-motion. We agree; we will reverse the summary

---

[1] Appellees William L. Nash, John Donald Nash, and Charles Nash (the Nashes) had joined KingKing's original motion for summary judgment, but they did not join KingKing's amended motion.

judgment in favor of KingKing (and the Nashes), render judgment in part for Rippy, and remand the case in part for further proceedings.

## Factual Background

On January 18, 2006, William L. Nash, John Donald Nash, and Charles Nash granted Range Production I, L.P. an oil, gas, and mineral lease (the Range Lease) on approximately 1,888 acres of land in Leon County. The Range Lease had a primary term of three years with an option to extend the term for two years. The option was exercised.

The Range Lease provides in pertinent part:

> 2. Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of three (3) years from the date hereof, hereinafter called "primary term," and as long thereafter *as operations, as hereinafter defined*, are conducted upon said land *with no cessation for more than ninety (90) consecutive days*.
> ….
> 6. Whenever used in this lease the word "*operations*" shall mean *operations for and any* of the following *drilling*, testing, completing, reworking, recompleting, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, production of oil, gas, sulphur or other mineral, whether or not in paying quantities. [Emphases added.]

In September 2009, Range Production assigned the Range Lease to Rippy, and in September 2010, Rippy received a drilling permit for a well on the Range Lease. Also in September 2010, the Nashes granted a "top lease"[2] to KingKing (the KingKing lease) on the 1,888 acres. The KingKing lease was expressly subordinate to the Range Lease and

---

[2] "A top lease is a lease granted by a landowner during the existence of a recorded mineral lease which will become effective if and when the existing lease expires or is terminated." *Shown v. Getty Oil Co.*, 645 S.W.2d 555, 561 (Tex. App.—San Antonio 1982, writ ref'd) (citing WILLIAMS AND MEYERS *Oil and Gas Law Manual of Terms* 1981 at 606); *see also* BLACK'S LAW DICTIONARY 972 (9th ed. 2009) ("A lease granted on property already subject to an oil-and-gas lease.").

was to become effective only upon the expiration of the Range Lease. The payment terms of the KingKing Lease were $325 per acre, with $25 per acre payable at signing and $300 per acre payable if the Range Lease expired and the KingKing Lease took effect, plus a 25% royalty.

In his deposition, Charles Nash said that in "probably" October 2010, he spoke with who he thought was Rippy's landman, who told Charles that a surveying crew would be on the lease to survey for a well site. Charles was aware of Rippy's drilling permit and spoke with Diane of KingKing about the two leases "coming together" "close to the time frame issue on January 18."

Around January 1, 2011, Charles called KingKing to tell them that Rippy was starting to work. He told Diane: "Hey, you know, we might have a problem here; they're starting to work here, and I don't know who's right or wrong here." Charles knew that if the Range Lease expired and the KingKing Lease became effective, the Nashes would be paid $300 per acre.

On January 7, Charles signed a damage release and acknowledged payment for wellsite-pad construction and access road use. The surface-damage payment later made by Rippy was $28,650. Rippy points to the release and payment documents to show that it was constructing a 2.88-acre well site and a 2.92-acre road to the well site.

As for the construction that Charles observed in early January, he testified that it was:

> Just general construction of the building of an oil well pad, the road construction, pad preparation, hauling of clay to the road and pad,

eventually rocking it, their water wells, setting the conductor pipe, moving the rig in.

Charles said that, by January 17, the pad was started, but nothing was complete. He testified that the conductor pipe had been installed on either January 12 or 13. Charles assumed that Rippy was "going to eventually drill a well there if they were doing the dirt work to prepare the pad site."

On January 18, Charles placed a lock on the gate to the site. His explanation for doing that was that he wanted Rippy and KingKing to communicate because he did not know which lease was valid. He had spoken with KingKing, and Diane told him that she did not think that "starting a road site, well site, was valid to hold the lease beyond the expiration of the term." Also, around January 18, Charles spoke with Nick McDonough, a lawyer for KingKing, and he told Charles that he did not think that "starting preparation of the road or well pad was sufficient to hold the lease."

After Rippy's workers cut the lock and entered the property, Charles called the police. His explanation for doing so was "to have some documented proof that they entered the property when they may not have had a valid lease." When the deputy arrived, Charles told him that there was a dispute between two oil companies and that the Nashes were in the middle of it. The deputy concluded that it was a civil dispute, and no arrests were made.

In his affidavit, Charles Rippy, the managing partner of Rippy Interests, stated:

> In January 2011 I hired Wayne Davis to serve as general contractor for the drilling of the Nash 1H well on the premises of the Nash lease.
>
> I received bids and hired Fluid Disposal Specialties, Inc., Zoch

Construction, Inc., and Pipe Maintenance, Inc. to prepare a well pad, construct an access road, and to install conductor pipe at the well location for the Nash 1H lease. The work commenced on January 7, 2011 and continued up to and after January 18, 2011.

On January 10, 2011 I called Energy Drilling Company to solicit a bid for a drilling rig to be provided to the Nash 1H well site. I received a bid for a drilling rig on January 18, 2011.

On January 18, 2011, the gate constructed on the site was locked by the owner Charles Nash. Our contractors gained access to the site and continued construction. On January 19, 2011, the police had been called to arrest our contractors for criminal trespass. No arrest occurred and our contractors then continued working.

On February 12, 2011 I signed a contract with Energy Drilling Services for the provision of a drilling rig and drilling of a well. The rig was provided and drilling commenced between February 25, 2011 and March 1, 2011.

As of March of 2011, Rippy Interests had expended $849,404.00 in pursuit of drilling the Nash 1H well.

Mr. Rippy testified that they drilled a vertical well to 7,900 feet as a pilot hole. Rippy's plan was to then evaluate the well bore and set cement plugs (which they did), and then bring in a bigger drilling rig to drill horizontally 3,500 feet. Mr. Rippy said that, after the pilot hole was completed, they did not complete the horizontal well because of the challenge to Rippy's title. Rippy last conducted work on the Nash property in March of 2011.

In his deposition, when asked how there was a challenge to title, Mr. Rippy said that it was when Charles Nash put a lock on the gate and then called the sheriff's department. He also said that his brother Reed Rippy had conversations with Charles

Nash in January and February of 2011 and that Charles Nash "indicated he felt like the lease was expired."

**Procedural Background**

On January 24, 2011, Rippy sued the Nashes for injunctive relief, alleging that Charles Nash had made attempts to prevent Rippy from conducting operations on the Nash land by locking the gate and attempting to have workers arrested for criminal trespass. The Nashes filed a general denial on February 11, 2011.

In June 2011, Rippy filed an amended petition that added KingKing as a defendant and added a claim for declaratory relief. Rippy sought declarations that the Range Lease had been extended by Rippy's operations and was in full force and effect and that the KingKing Lease was not the controlling lease. KingKing filed a counterclaim that sought a declaratory judgment that the Range Lease expired and that the KingKing Lease was the only valid lease. KingKing also asserted claims for trespass to try title, to quiet title and remove cloud from title, and for slander of title. Rippy later asserted wrongful repudiation of the Range Lease as an affirmative defense to the counterclaim.

KingKing filed a combined no-evidence and traditional motion for summary judgment. It asserted that KingKing was entitled to judgment as a matter of law on Rippy's declaratory-judgment claim because there was no evidence that the Range Lease was extended by agreement, no evidence that operations were being conducted on the lease before expiration, and no evidence that a well or equipment capable of drilling a well existed on the lease. KingKing also sought traditional summary

judgment on its counterclaims based on its alleged superior title because of the Range Lease's expiration.

The Nashes filed a motion for joinder in KingKing's motion for summary judgment on February 2, 2012. It states:

> The claims for relief put forth by US KingKing, LLC in its No Evidence and Traditional Motions for Summary Judgment against Rippy Interests, LLC are hereby adopted by the Nash Defendants. The motions by US KingKing LLC request relief on the controlling questions in this case which will be dispositive of the claims by Rippy Interests, LLC against the Nash Defendants.
>
> The Nash Defendants pray that the Court grant the Motions for Summary Judgment by US KingKing, LLC and order that all interests and all rights claimed by Rippy Interests, LLC in and under any leases of the real property of the Nash Defendants have expired and are terminated.

Rippy filed a response to KingKing's motion for summary judgment and a cross-motion for summary judgment. Based on its summary-judgment evidence, Rippy moved for traditional summary judgment on the ground that its title was superior to KingKing's alleged title. Rippy asserted that it was entitled to prevail on its claims for trespass to try title, suit to quiet title, and to have the Range Lease declared to be in full force and effect because the summary-judgment evidence established that Rippy was conducting operations for drilling at the time of the Range Lease's expiration and thus, as a matter of law under the terms of the Range Lease, the operations for drilling held the lease for Rippy beyond its expiration and Rippy retained title under the Range Lease.

KingKing then filed an amended no-evidence and traditional motion for summary judgment that added the following ground: even if Rippy were conducting

operations to hold the Range Lease, those operations were not conducted without cessation for more than ninety days, and the Range Lease expired because Rippy failed to maintain continuous operations. KingKing also added the following no-evidence summary-judgment grounds: (1) there is no evidence that operations were conducted without cessation for more than ninety days; and (2) there is no evidence of repudiation "and/or" Rippy's reliance on repudiation to excuse Rippy from performance under the Range Lease. The Nashes did not file a joinder to KingKing's amended motion.

Rippy filed a response to KingKing's amended motion and filed as additional summary-judgment evidence the depositions of Charles Rippy and Charles Nash. The trial court dismissed Rippy's claims with prejudice, granted KingKing's amended motion (in part[3]), and granted declaratory relief as follows:

> It is therefore ORDERED, ADJUDGED, and DECREED that the oil and gas lease between Range Production I, LP and the Nash defendants, attached to this order as Exhibit A, is void/expired and is no longer effective. Accordingly, it is therefore ORDERED, ADJUDGED, and DECREED that the oil and gas leases between U.S. KingKing, LLC and the Nash defendants, attached to this order as Exhibit B, are effective.

The trial court did not otherwise state the grounds or reasons for granting KingKing's amended motion for summary judgment.

Rippy asserts on appeal that the trial court erred in granting KingKing's amended motion for summary judgment and should have granted Rippy's cross-motion for summary judgment because Rippy perpetuated the Range Lease by conducting "operations for drilling" and because the Nashes repudiated the Range

---

[3] The trial court did not grant relief on KingKing's other counterclaims, and its order denied "[a]ny relief expressly requested by any party and not granted herein."

Lease, which excused Rippy's performance under the ninety-day cessation-of-operations clause until judicial resolution of the dispute.

## Standard of Review

Rippy's first issue is that the trial court erred in granting summary judgment for KingKing. We review a trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing a traditional motion for summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See id.* at 756. In our review, we take the nonmovant's competent evidence as true. *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex. 2005).

A no-evidence motion for summary judgment is essentially a motion for pretrial directed verdict. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 581 (Tex. 2006); *see also Humphrey v. Pelican Isle Owners Ass'n,* 238 S.W.3d 811, 813 (Tex. App.—Waco 2007, no pet.). Once such a motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. *Tamez,* 206 S.W.3d at 583. The nonmovant must produce "summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i). When determining if more than a scintilla of evidence has been produced, the evidence must be viewed in

the light most favorable to the nonmovant. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598,

601 (Tex. 2004).

> The party moving for summary judgment bears the burden of proof. *Roskey v. Tex. Health Facilities Comm'n,* 639 S.W.2d 302, 303 (Tex. 1982). Though these burdens vary for traditional and no-evidence motions, the summary judgment motion here was a hybrid motion and both parties brought forth summary judgment evidence; therefore, the differing burdens are immaterial and the ultimate issue is whether a fact issue exists. *Buck v. Palmer,* 381 S.W.3d 525, 527 & n.2 (Tex. 2012). A fact issue exists if there is more than a scintilla of probative evidence. *See id.* at 527; TEX. R. CIV. P. 166a(c), (i).

*Neely v. Wilson,* 418 S.W.3d 52, 59 (Tex. 2013).

When competing motions for summary judgment are filed and one is granted

and the other is denied, the general rule is that an appellate court should determine all

questions presented and render the judgment the trial court should have rendered if the

motions sought final judgment. *Mid-Continent Cas. Co. v. Global Enercom Management,*

*Inc.,* 323 S.W.3d 151, 153-54 (Tex. 2010). In doing so, we first review the order granting

summary judgment, and if we determine the order was erroneous, we review the trial

court's action in overruling the denied motion. *Wolfe v. Devon Energy Prod. Co., LP,* 382

S.W.3d 434, 443 (Tex. App.—Waco 2012, pet. denied). We should then render the

judgment that the trial court should have rendered, including one that denies both

motions. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Wolfe*,

382 S.W.3d at 443.

## "Operations for Drilling"

In its second issue, Rippy contends that summary judgment for KingKing was

improper because the Range Lease required that only "operations for drilling" be

conducted before the lease expired and that the operations that Rippy had conducted perpetuated the Range Lease as a matter of law.[4] KingKing and the Nashes do not contest Rippy's initial construction of paragraph 6 of the Range Lease—that "operations" to perpetuate the lease include "operations for drilling." Where the parties disagree is whether the operations for drilling that Rippy conducted before the lease's expiration were adequate under Texas law to perpetuate the lease.

KingKing and the Nashes primarily rely on *Ridge Oil Co. v. Guinn Investments, Inc.*, 148 S.W.3d 143 (Tex. 2004) and assert that the lessee's level of activity in that case was similar to Rippy's and did not satisfy the lease's operations clause. In *Ridge Oil*, the lessee obtained a drilling permit and attempted to pay surface damages, and the only physical operation was driving a wooden stake into the ground to mark the well site. *Id.* at 157-58. The court held that, as a matter of law, the lessee did not conduct operations to maintain the lease. *Id.* at 160. In its analysis, the court discussed *Whelan v. R. Lacy Inc.*, 251 S.W.2d 175 (Tex. Civ. App.—Texarkana 1952, writ ref'd n.r.e.). *Id.* at 158. There the "drilling operations" clause was satisfied as a matter of law "when the lessee went onto the property with a bulldozer nine days before the primary term expired and there was 'continuous work' thereafter until a producing well was completed." *Id.* at 158 (citing *Whelan*, 251 S.W.2d at 176).

---

[4] Both KingKing and the Nashes alternatively argue that Range's assignment to Rippy required Rippy to be "engaged in actual drilling operations" for the assignment to "remain in full force and effect." The assignment defined "actual drilling operations" "as the penetration of the surface with a drilling rig capable of drilling to the anticipated total depth of the well." But as Rippy notes, the assignment between Range and Rippy did not, and could not, change the terms of the Range Lease with the Nashes. KingKing and the Nashes cite no authority to support their reliance on the assignment, and Rippy notes that, as third parties to the assignment, KingKing and the Nashes lack standing to enforce it. *See Grinnell v. Munson,* 137 S.W.3d 706, 714 (Tex. App.—San Antonio 2004, no pet.).

The court then summarized a collection of relevant cases (cases concluding "that particular activities satisfied the particular lease provisions at issue"), as follows:

> *See Utley v. Marathon Oil Co.,* 31 S.W.3d 274, 275, 278-79 (Tex. App.—Waco 2000, no pet.) (lease required operations for drilling, mining or reworking or additional operations to be commenced or prosecuted with no cessation of more than ninety consecutive days and pipeline leading to the well was being constructed during disputed time and "there were activities testing and trying to obtain production from ... a 'wildcat' well"); *Petersen v. Robinson Oil & Gas Co.,* 356 S.W.2d 217, 219 (Tex. Civ. App.—Houston 1962, no writ) (court recounted activities each day, including driving a stake and leveling with a maintainer one day, more maintainer work the next two days, use of a caterpillar the following day, constructing a road each of the next several days, and moving a drill onto the location, continuing work on the rig and drilling without interruption when lease required drilling or reworking operations with no cessation of more than sixty consecutive days); *Morrison v. Swaim,* 220 S.W.2d 493, 494-96 (Tex. Civ. App.—Eastland 1949, writ ref'd n.r.e.) (detailing work done each day after expiration of the primary term on well drilled before end of primary term under a lease that remained in effect after the primary term as long "as the lessee in good faith shall conduct drilling operations thereon and should production result"); *Guleke v. Humble Oil & Ref. Co.,* 126 S.W.2d 38, 39, 41-42 (Tex. Civ. App.—Amarillo 1939, no writ) (lease in effect so long as drilling or reworking operations were prosecuted with no cessation of more than thirty days, and lessee made a location for the well, the next day brought to the location material for a steel tower and other material including cement and pipe, dug a slush pit and well for water, later erected the steel derrick, and did not cease work at any time until gas was produced); *Terry v. Tex. Co.,* 228 S.W. 1019, 1019-20 (Tex. Civ. App.—Fort Worth 1920, no writ) (lease required that lessee "commence to drill a test well" within eight months and within that time lessee brought timbers onto the property for erection of a derrick, as well as machinery including a boiler, commenced "rigging up" for a well the day before the eight months expired and commenced actual drilling eight days after the eight months expired); *see also Gray v. Helmerich & Payne, Inc.,* 834 S.W.2d 579, 580 (Tex. App.—Amarillo 1992, writ denied) (parties essentially agreed that performing the first road construction and installing a cattleguard before the end of the primary term satisfied a requirement of commencement of drilling or reworking operations so that issue was not before the court).

*Id.* at 158 n.73; *see also* RICHARD HEMINGWAY, LAW OF OIL AND GAS 321 (West 2d. ed.

1983) ("the vast majority of well completion clauses have a condition that the lessee must have commenced operations for the drilling of a well prior to the end of the primary term. Such operative language has been generally interpreted to mean that operations for the drilling of a well, and not the actual spudding in or drilling of the hole, must have commenced prior to the end of the primary term."); *id.* at 332 ("A minimum of physical activities would seem to include the staking of the well site plus some acts to the land itself such as leveling the site and digging slush pits.").

In this case, it is undisputed that Rippy did the following before the Range Lease's expiration: Rippy obtained a drilling permit and a surface-damage release; it hired a drilling contractor and solicited a bid for a drilling rig, which bid was received on January 18; it hired contractors to prepare the well site; and through those contractors, it began construction of a 2.88-acre well site and a 2.92-acre road to the well site with heavy earth-moving equipment and set (installed) conductor pipe[5] in the ground. Furthermore, as a result of those operations, Rippy actually drilled the pilot hole within the next two months. As a matter of law, Rippy conducted operations for drilling before the Range Lease expired, and the trial court should have denied

---

[5] "The conductor pipe is an essential component of a gas well. It is designed to prevent the hole from caving-in and to support the great weight of the drill pipe. The conductor pipe consists of a large diameter casing … placed … in the ground." *Exxon Corp. v. Crosby-Mississippi Resources, Ltd.,* 154 F.3d 202, 207 (5th Cir. 1998); *see also* MANUAL OF OIL AND GAS TERMS 131-32, 190 (13th ed. 2006) ("conductor pipe" is casing pipe "used to seal off fluids from the hole or to keep the hole from caving in.") SCHLUMBERGER OILFIELD GLOSSARY, http://www.glossary.oilfield.slb.com/en/Terms/c/conductor_pipe.aspx ("The casing string that is usually put into the well first, particularly on land wells, to prevent the sides of the hole from caving into the wellbore. This casing, sometimes called drive pipe, is generally a short length and is sometimes driven into the ground.").

KingKing's amended motion in that respect.[6]  We thus sustain issue two, and to the extent that the trial court granted summary judgment for KingKing on that basis, we sustain issue one.  The trial court should have granted Rippy's cross-motion and granted declaratory relief for Rippy that the Range Lease was perpetuated by Rippy's operations for drilling that it conducted before the primary term's expiration.

## Cessation and Repudiation

KingKing's amended summary-judgment motion asserted that, even if Rippy conducted operations to hold the Range Lease, those operations were not conducted without cessation for more than ninety days, and the Range Lease expired because Rippy failed to maintain continuous operations.  It also asserted that the summary-judgment evidence conclusively negated Rippy's repudiation defense that was asserted to excuse Rippy from performance under the Range Lease.  Specifically, KingKing asserted (1) that there was no "clear, unequivocal challenge" to Rippy's title because Rippy continued working on the leased premises after the alleged repudiation; and (2) that there was no reliance on the alleged repudiation because Rippy continued working for several months after the alleged repudiation and because there is evidence that Rippy ceased work for reasons other than the alleged repudiation.

---

[6] The Nashes and KingKing contend that the lease's primary term expired on January 17, 2011, at 11:59 p.m.; they cite no supporting authority.  Rippy disagrees, noting that the Range Lease's primary term (three years plus the two-year extension) ran "from the date hereof," January 18, 2006.  Rippy is correct that the lease expired at the end of the day on January 18, not on January 17.  *See, e.g., Peterson,* 356 S.W.2d at 218-20 (lease dated March 27 was set to expire at midnight on March 27 but was extended by leveling well location on March 27); *Guleke,* 126 S.W.2d at 39, 41 (discussing event on November 5, the day following the last day of the "primary term of the lease" dated November 4); *cf. Medina v. Lopez-Roman,* 49 S.W.3d 393, 397-99 (Tex. App.—Austin 2000, pet. denied) (discussing computation of years for purpose of statute of limitations period).

KingKing also sought a no-evidence summary judgment on Rippy's repudiation defense. Specifically, KingKing asserted that there was no evidence that Rippy conducted operations without cessation for more than ninety days and no evidence of repudiation by the Nashes or of Rippy's reliance on any repudiation.

In its third issue, Rippy complains about summary judgment on its repudiation defense. Because KingKing's amended motion was a "hybrid motion" and both parties brought forth summary-judgment evidence, the differing burdens are immaterial and the ultimate issue is whether a fact issue exists. *Neely,* 418 S.W.3d at 59.

It is undisputed that, after completing the pilot hole in March 2011, Rippy ceased operations on the Range Lease for more than ninety days. Mr. Rippy so testified; but he also said that Rippy ceased operations on the Range Lease at that time and did not complete the well because of a "challenge to the title." Rippy's defense is that the Nashes repudiated the Range Lease and that the repudiation excuses Rippy's failure to conduct operations without cessation for more than ninety days. Thus, we must determine if summary judgment for KingKing was proper on Rippy's repudiation defense.

> The law is well-settled in Texas that "[l]essors who ... wrongfully repudiate the lessees' title by unqualified notice that the leases are forfeited or have terminated cannot complain if the latter suspend operations under the contract pending a determination of the controversy and will not be allowed to profit by their own wrong." A lessor's repudiation of a lease relieves the lessee "from any obligation to conduct any operations, drilling, re-working, or otherwise, on said land in order to maintain the lease in force pending the judicial determination of the controversy ... over the validity of the lease."

*Ridge Oil,* 148 S.W.3d at 157 (citations in footnotes omitted).

The elements of repudiation of an oil-and-gas lease are:

(1)  A subsisting lease (*i.e.*, a lease that has not expired).  *Chesapeake Exploration, L.L.C. v. Valence Operating Co.,* No. H-07-2565, 2008 WL 4240486, at *4 (S.D. Tex. Sept. 10, 2008); *Exploracion De La Estrella Soloataria Incorporacion v. Birdwell,* 858 S.W.2d 549, 555 (Tex. App.—Eastland 1993, no writ).

(2) The lessor's "unqualified notice" that the lease has been forfeited or terminated.  *Ridge Oil,* 148 S.W.3d at 157; *see also Chesapeake,* 2008 WL 4240486, at *4 (a "clear, unequivocal challenge" by the lessor to the lessee's title to, and interest in the lease (quoting *Atkinson Gas Co. v. Albrecht,* 878 S.W.2d 236, 239 (Tex. App.—Corpus Christi 1994, writ denied)).

Reliance (*i.e.*, the lessee's suspension of operations in reliance on, or as a result of, the lessor's alleged repudiation), while seemingly implicit in the doctrine of repudiation of a lease, has also been stated to be part of the showing that the lessee must make to establish the lessor's repudiation.  *See BB Energy LP v. Devon Energy Prod. Co., LP,* No. 3:07-CV-0723-O, 2008 WL 2164583, at *12 (N.D. Tex. May 23, 2008) ("When the lessee shows it relied on the acts of the lessor and suspended operations pending a determination of the validity of the lease, the doctrine of repudiation prevents the lease from terminating while the lawsuit questioning the validity of a lease is pending."); *Atlantic Richfield Co. v. Hilton,* 437 S.W.2d 347, 355 (Tex. Civ. App.—Tyler 1969, writ ref'd n.r.e.) ("Moreover, Atlantic failed to establish that *as a result* of any of the grounds alleged to constitute repudiation of the lease, it suspended operations under the Hilton-Atlantic Lease or that it acted thereon to its prejudice.") (emphasis added).

*Subsisting Lease*

We held above that the Range Lease did not expire—that it was subsisting

because Rippy conducted operations for drilling before the lease expired. To the extent the trial court granted summary judgment for KingKing on that basis, it erred.

*Unqualifid Notice*

We thus turn to whether a fact issue exists on repudiation by the Nashes of Rippy's title under the Range Lease. Rippy asserts that Charles Nash's placing a lock on the gate to the well site and then calling police and alleging criminal trespass when Rippy's contractors cut off the lock and entered the premises is evidence of repudiation. Rippy also asserts that, by filing their February 11, 2011 general denial to Rippy's January 24 original petition for injunctive relief, the Nashes challenged Rippy's title.[7] *See* TEX. R. CIV. P. 92 (general denial puts at issue everything in plaintiff's pleading that is not required to be denied under oath or specially denied); *Shell Chem. Co. v. Lamb*, 493 S.W.2d 742, 744 (Tex. 1973) (general denial joins issue "on all material facts asserted by plaintiff"). In its petition, Rippy pleaded that it was conducting operations on the lease and that continuing operations would extend the lease past the primary term, but that Charles Nash was attempting to obstruct Rippy's operations.

KingKing and the Nashes both argue that Charles Nash's placing a lock on the gate to the well site and then calling police were not clear, unequivocal challenges to title because he testified that his motives were to try to get Rippy and KingKing to communicate and to document that Rippy's contractors had cut the lock and entered

---

[7] Rippy further points to the Nashes' joinder of KingKing's original motion for summary judgment. In that joinder, the Nashes requested that the trial court grant KingKing's motion and order that all of Rippy's rights and interests in the Range Lease "have expired and are terminated." But the joinder, while plainly a repudiation of Rippy's title, was filed on February 2, 2012, around ten months after Rippy had stopped working on the lease, so Rippy could not have ceased operations as a result of the Nashes' joinder.

the premises. KingKing also argues on appeal that there is no evidence of alleged repudiation by William Nash or John Nash, but they are parties to the general denial to Rippy's original petition.[8]

Rippy responds that a factfinder could disregard Charles Nash's testimony about his motives. *See Young v. Qualls,* 223 S.W.3d 312, 314 (Tex. 2007) (noting that "unsubstantiated and self-serving" testimony is "evidence of the type a jury could disregard"). And Rippy notes the Nashes' financial incentive in KingKing's defeating Rippy's repudiation defense and having the Range Lease declared expired—they would be due $300 per acre from KingKing for their 1,888 acres.

In the summary-judgment context, neither we nor the trial court weighs the evidence or judges the credibility of either side's version of events; the only issue is whether a fact issue exists. *See Huckabee v. Time Warner Entertainment Co. L.P.,* 19 S.W.3d 413, 422 (Tex. 2000) ("Texas law has always emphasized that trial courts must not weigh the evidence at the summary judgment stage. Instead, a trial court's only duty at the summary judgment stage is to determine if a material question of fact exists."); *see also Casso v. Brand,* 776 S.W.2d 551, 558 (Tex. 1989) ("If the credibility of the affiant or deponent is likely to be a dispositive factor in the resolution of the case, then summary judgment is inappropriate."). And in making that determination, we must consider all the evidence in the light most favorable to Rippy, the nonmovant, and indulge every reasonable inference in favor of Rippy and resolve any doubts against the motion.

---

[8] To the extent that this argument is made as a summary-judgment ground, it was not made in KingKing's amended motion and cannot be a basis for summary judgment. *See Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 204 (Tex. 2004) (noting that a "court cannot grant summary judgment on grounds that were not presented").

Reasonable and fair-minded jurors could conclude that Charles Nash's putting a lock on the gate to the well site is "unqualified notice" to Rippy that the Nashes considered the Range Lease to have expired and that Rippy no longer had a right to be on the premises. And for Mr. Rippy's affidavit testimony that the police were called to arrest Rippy's contractors for criminal trespass, reasonable and fair-minded jurors could reasonably infer that Charles Nash called the police because the Nashes considered the Range Lease to have expired and that Rippy no longer had a right to be on the premises. Mr. Rippy testified that, in conversations with Reed Rippy, Charles Nash "indicated he felt like the lease was expired." Mr. Rippy also said several times that there was a "challenge to the title."

KingKing and the Nashes also both argue that, by continuing operations after Charles Nash put a lock on the gate and called police, Rippy did not treat or accept Charles Nash's acts as a repudiation of the Range Lease. This argument is more pertinent to KingKing's no-reliance argument, but to the extent that it is relevant to the issue of unqualified notice of a challenge to title by the Nashes, we cannot make that inference against Rippy and must resolve any doubt in Rippy's favor.

Because there is more than a scintilla of evidence on whether there was unqualified notice by the Nashes to Rippy that the Range Lease was terminated, and because there is conflicting summary-judgment evidence on that issue, a genuine issue of material fact exists on whether the Nashes gave unqualified notice that the Range Lease was terminated. Accordingly, summary judgment on this ground was erroneous, and the trial court should have denied KingKing's amended motion in this respect.

*Reliance*

Mr. Rippy testified that, after the pilot hole was completed, Rippy did not complete the horizontal portion of the well and stopped working on the Nash premises because of "a challenge to the title." This testimony is more than a scintilla of evidence that Rippy ceased operations as a result of the Nashes' repudiation.

KingKing also moved for summary judgment on the ground that there was no reliance on the alleged repudiation because Rippy continued working for several months after the alleged repudiation and because, when Rippy did eventually cease operations, it did so for reasons other than the alleged repudiation. KingKing argues that by continuing operations after the acts of alleged repudiation, Rippy did not rely on the alleged repudiation or waived it. The Nashes similarly argue that Rippy did not rely on the alleged repudiation because it did not "accept" it, which was required.[9]

In *Chesapeake Exploration v. Valence Operating*, the lessor (CP) argued that there was no repudiation because the lessee's (Chesapeake's) actions after the alleged repudiation did not comport with its repudiation argument. *Chesapeake Exploration*, 2008 WL 4240486, at *6. The federal court stated:

> Essentially, CP is arguing that Chesapeake waived its right to use the repudiation defense when it acted in a manner inconsistent with repudiation. … However, **the court has not located any Texas law**

---

[9] In arguing that the other party must accept the repudiation and not treat the contract as "alive," the Nashes cite cases involving repudiation of a contract, rather than an oil-and-gas lease. *See, e.g., Griffith v. Porter*, 817 S.W.2d 131, 135 (Tex. App.—Tyler 1991, no writ) ("If the repudiation is not accepted by the other party, the contract is kept alive for the benefit of both parties; the non-repudiating party, like the repudiating party, remains subject to all obligations under the contract.") (citing *Vise v. Foster*, 247 S.W.2d 274, 280-81 (Tex. Civ. App.—Waco 1952, writ ref'd n.r.e.)). But as next explained, acceptance and waiver are not applicable to a repudiation defense involving continuing operations under an oil-and-gas lease after an alleged repudiation.

**stating that a party claiming repudiation of a lease with an operations clause waives the repudiation defense by continuing operations**. To the contrary, the statements of law regarding repudiation of an oil and gas lease speak in terms of the relief of an obligation to perform, not a bar to further performance. *See e.g., Ridge Oil Co. v. Guinn Invs., Inc.,* 148 S.W.3d 143, 157 (Tex. 2004) (lessors who repudiate may not complain if lessee suspends operations); *Mitchell,* 80 F.3d at 982 (repudiation "relieves the lessee from any obligation to conduct operations"); *Atkinson,* 878 S.W.2d at 239 ("[R]epudiation by a lessor relieves the lessee from any obligation to conduct any operation on the land in order to maintain the lease."); *Cheyenne,* 714 S.W.2d at 105 (same); *Kothmann,* 308 S.W.2d at 4 (lessors who repudiate "cannot complain if [the lessees] suspend operations under the contract pending a determination"). **Furthermore, it seems rather a paradox to find that a lessee can lose his right to perform more operations under the lease by performing operations under the lease.** Therefore, the fact that Chesapeake wanted to renew the lease and applied for drilling permits does not affect its ability to bring the repudiation defense.

*Id.* (emphases added).

We agree that the mere fact of a lessee's continuing operations after an alleged repudiation of the lease is not a waiver of a repudiation defense; it also does not negate as a matter of law the lessee's reliance on the alleged repudiation. Thus, summary judgment was improper on the ground that Rippy's continuing operations negated Rippy's reliance on the repudiation when it eventually did cease operations allegedly as a result of the repudiation.

KingKing argues that the summary-judgment evidence negates Rippy's reliance because it conclusively establishes that, when Rippy eventually ceased operations, it did so for reasons other than the alleged repudiation. KingKing first points to Mr. Rippy's testimony that the initial drilling rig was not adequate to drill the horizontal portion of the well and argues that Rippy stopped drilling for that reason, not because of the

alleged repudiation. But Mr. Rippy testified that Rippy's original plan was to bring in a bigger rig to drill the horizontal portion of the well, but that plan was changed in March. At that point, Mr. Rippy was not asked why the plan was changed. Earlier in his deposition, when he was asked why Rippy did not complete the well, Mr. Rippy answered: "Because there was a challenge to the title." When asked why Rippy stopped working on the Nash lease, Mr. Rippy answered: "Because there was a challenge to the title." And later in the deposition, when he was asked if the challenge to the title was the only reason that Rippy did not "get a rig out there since March 2011," Mr. Rippy answered: "Yes."

While it is undisputed that Rippy stopped drilling and ceased operations after the pilot well was drilled with the initial rig, Mr. Rippy never said that the reason Rippy stopped drilling or ceased operations was because the initial rig was inadequate to complete the horizontal portion of the well. Mr. Rippy's testimony that the initial rig was not adequate to complete the well is thus not evidence that Rippy did not rely on the alleged repudiation.

KingKing then points to Mr. Rippy's testimony that Rippy had not drilled "any additional wells since March 2011" because Rippy was "evaluating as to whether to bring in a partner for further development" "primarily as a function of economics." From this, KingKing argues that Rippy ceased operations because it did not have the money to complete the well.

As Rippy correctly points out, the question being answered referred to "additional wells," not to why it had not completed the pilot well. Moreover, Mr.

Rippy had already testified that Rippy had a partner in the Range Lease. That Rippy had not drilled additional wells on the Range Lease because it was considering another partner is not evidence that Rippy did not rely on the alleged repudiation.

The summary-judgment evidence shows that there is a genuine issue of material fact on why Rippy ceased operations in March 2011 after completing the pilot well. Accordingly, summary judgment on KingKing's no-reliance ground was erroneous, and the trial court should have denied the amended motion in that respect. We sustain issue three, and to the extent that the trial court granted summary judgment for KingKing on Rippy's repudiation defense, we further sustain issue one.

In its fourth issue, Rippy contends that the Range Lease was extended because the Nashes repudiated the lease. But because Rippy did not move for summary judgment on its repudiation defense in its cross-motion, we cannot address that contention in this appeal. *See Johnson,* 73 S.W.3d at 204. Issue four is overruled.

## Conclusion

The trial court erred in granting KingKing's amended no-evidence and traditional motion for summary judgment. In sustaining issues one and two, we reverse the trial court's order granting the amended motion and its decree that the oil-and-gas lease between Range Production I, LP and William L. Nash, John D. Nash, and Charles Nash is "void/expired and is no longer effective" and that the leases between KingKing and the Nashes are effective. The trial court should have denied KingKing's amended motion for summary judgment and should have granted Rippy's cross-motion for summary judgment. We thus render judgment that the oil-and-gas lease

between Range Production I, LP and William L. Nash, John D. Nash, and Charles Nash is in effect, subject to further proceedings consistent with this opinion.

In sustaining issues one and three, we reverse the trial court's order granting KingKing's amended motion for summary judgment on Rippy's repudiation defense, which should have been denied, and we remand this case for further proceedings consistent with this opinion.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Reversed and rendered in part and remanded in part
Opinion delivered and filed August 21, 2014
[CV06]